POWELL, APPELLANT AND CROSS-APPELLEE, *v.* CONSOLIDATED RAIL CORP. ET AL., APPELLEES AND CROSS-APPELLANTS.■

(Nos. CA85-05-052 and -054 — Decided April 14, 1986.)

*Jack C. McGowan* and *Michael J. Sage,* for appellant and cross-appellee.

*Gary D. Bullock,* for appellees and cross-appellants.

*Per Curiam.* This is an appeal and cross-appeal from the granting of summary judgment in favor of defendants-appellees, Consolidated Rail Corporation and numerous employees (hereinafter collectively "Conrail") who were responsible for the operation of a Conrail train and maintenance of a crossing gate and its lights. Plaintiff-appellant, Phillip L. Powell, as executor of the estates of Kimberly Lee Powell and Shawna Lee Powell, and as guardian on behalf of his son, Phillip J. Powell, filed this action against Conrail as a result of a car-train collision which occurred May 14, 1981, on Old Oxford State Road which, it was alleged, was caused by the negligence of Conrail in the maintenance of the crossing.

The trial court granted summary judgment in favor of Conrail because it found that reasonable minds could only conclude, after considering the evidence in the light most favorable to appellant, that the act of Kimberly Powell in driving around the crossing gates was the sole proximate cause of the accident.

Appellant appeals arguing that the trial court erred in granting Conrail's motion for summary judgment. Conrail cross-appeals arguing that the trial court erred by using a *nunc pro tunc* entry dated subsequent to the decision on Conrail's motion for summary judgment to authorize the late filing of affidavits in opposition to the motion. Our examination of this matter begins with Conrail's cross-appeal.

I

Subsequent to the trial court's entry and opinion granting Conrail summary judgment on April 23, 1985, the court signed an entry on May 7, 1985, *nunc pro tunc* to April 3, 1985, stating that it had given appellant permission to file additional affidavits at the argument of the summary judgment motion on April

3, 1985. The record contains an entry dated April 16, 1985 giving appellant until April 19 to obtain and serve upon opposing counsel affidavits regarding the condition of the crossing gate on the date of the accident in issue. Conrail's counsel contends that an attorney's affidavit by which the existence of additional witnesses was suggested was not served on him before the motion for summary judgment was argued. It appears that the additional evidence referred to by the attorney's affidavit was not filed until April 29, 1985, some ten days after the date permitted by the trial court's entry and six days after summary judgment for Conrail was granted. However, the trial court's *nunc pro tunc* entry notes that the affidavit's contents did not affect his summary judgment decision for Conrail. Conrail has assigned the trial court's consideration of these affidavits as an abuse of discretion. We overrule this cross-appeal assignment of error for the reasons which follow.

First, the standard of review appropriate here is an abuse of discretion. It is apparent that the way in which these affidavits were brought to the trial court's attention did not comply with Civ. R. 5(D) regarding service of documents on opponents. While we cannot and do not approve of such tactics on the part of members of the bar involved in litigation, it does not appear that this was anything but a desperate, yet good faith, attempt to bring arguably relevant information to the trial court's attention.

An abuse of discretion is more than an error of law or judgment, but implies the exercise of a court's authority or an attitude on the part of a court which is arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230, 12 OBR 313, 466 N.E. 2d 875; *State v. Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144,

149. We do not find an abuse of discretion here. Although consideration of the affidavits without their being properly served violated the Civil Rules (an error of law), the trial court's consideration of them made certain a litigant was not deprived of his day in court unjustly. We do not perceive this to be the arbitrary employment of judicial authority.

II

Appellant contends in his assignment of error that the trial court should not have granted summary judgment for Conrail. Appellant contends there is overwhelming evidence that the crossing gate in question had a history of malfunctions in that it closed when no train was coming, and had so malfunctioned on the date of these tragic events. Based on this circumstance, appellant's brief submits: "* * * due to continual and frequent malfunction of the gates, the crossing gates ceased to warn the public at large, and Kimberly Powell in particular, of the coming of a train, and were therefore a proximate cause of the accident." We disagree.

While appellant's premise that the tendency of crossing gates to lower and warning lights to blink when no train is approaching is equivalent to no warning at all to persons aware of the devices' tendency to malfunction has support in the law, *Baltimore & Potomac RR. Co. v. Landrigan* (1903), 191 U.S. 461, 476; *Conner v. Pennsylvania RR. Co.* (E.D. Penn. 1958), 163 F. Supp. 718, 722, it does not necessarily follow that Conrail is liable. A cause of action in negligence has four elements: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury resulting. *Bennison v. Stillpass Transit Co.* (1966), 5 Ohio St. 2d 122, 34 O.O. 2d 254, 214 N.E. 2d 213; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 15 OBR 179, 472 N.E. 2d 707.

While appellant is correct that R.C. 4955.20 requires a railroad to maintain safe road-railway crossings, the citation

of *Hitchens* v. *Hahn* (1985), 17 Ohio St. 3d 212, 17 OBR 447, 478 N.E. 2d 797, for the proposition that negligence *per se*[1] does not mean liability *per se* is quite appropriate. As the Ohio Supreme Court observed in *Merchants Mut. Ins. Co.* v. *Baker* (1984), 15 Ohio St. 3d 316, 318, 15 OBR 444, 446, 473 N.E. 2d 827, 829, "[s]imply because the law may presume negligence from a person's violation of a statute or rule does not mean that the law presumes that such negligence was the proximate cause of the harm inflicted."

Countering appellant's position is R.C. 4511.62, which imposes a duty on a driver of an automobile to obey the warnings displayed by railroad crossing gates and lights. It is clear here that the warning devices at the crossing were operating when this collision occurred; nevertheless, they were ignored. Violation of this duty constitutes negligence *per se*, and would bar recovery for Kimberly Powell's estate, but not for her children, if such violation of the statute represented only fifty-one percent of the negligence which proximately caused the injuries which occurred here based on Ohio's comparative negligence statute, R.C. 2315.19. Thus, it is arguable that both sides have engaged in negligent conduct. That is, both Conrail and appellant's decedent acted in a way unlike that of an ordinary and reasonable person in the same situation. However, engaging in negligent conduct alone is not enough to make either party liable unless such negligence proximately resulted in injury or death.

Resolution of the question whether a certain party's negligence constituted the proximate cause of another's injury is a question of fact. *Keister* v. *Park Centre Lanes* (1981), 3 Ohio App. 3d 19, 3 OBR 20, 443 N.E. 2d 532. Thus, we must examine the evidence that was

before the trial court to determine whether genuine issues of material fact remain.

Appellant makes much of the fact that the crossing has historically experienced crossing-gate trouble and that such trouble had been noted up to three days before this collision. Accepting this as true, we do not believe the malfunction in the form of excessive as opposed to inadequate warnings is crucial to our decision. It is undisputed that the crossing gates were down and the warning lights were blinking when Kimberly Powell started across the tracks. Even if the gates were down due to a malfunction, Kimberly Powell had a duty to exercise ordinary care for her own safety before proceeding over the crossing. *Lohrey* v. *Baltimore & Ohio RR. Co.* (1936), 131 Ohio St. 386, 6 O.O. 93, 3 N.E. 2d 54. She would have this duty at a defectively guarded or completely unguarded railroad crossing. *Toledo Terminal Rd. Co.* v. *Hughes* (1926), 115 Ohio St. 562, 154 N.E. 916. The duty to exercise ordinary care for her own safety includes the duty to employ her own sight and hearing in an effective manner to discover the presence of trains. *North* v. *Pennsylvania RR. Co.* (1967), 9 Ohio St. 2d 169, 38 O.O. 2d 410, 224 N.E. 2d 757.

Having examined the depositions and exhibits attached thereto, this court concludes, as did the trial court, that reasonable minds could only conclude that had Kimberly Powell looked as she passed around the lowered crossing gate, she would have seen the train approaching in time to avoid the collision. However, she did not. In spite of her legal duty to do so, Kimberly Powell nevertheless proceeded to cross the tracks without ordinary and reasonable regard for her own safety. Thus, we conclude that she alone proximately caused

---

[1] A failure to comply with requirements of a statutory duty. *Ornella* v. *Robertsons* (1968), 14 Ohio St. 2d 144, 43 O.O. 2d 246, 237 N.E. 2d 140.

her death, the death of one child, and the injury to the other.

While we sincerely sympathize with this tragic loss, and we do not condone shoddy maintenance of Conrail gate crossings, neither can we legally obligate Conrail to compensate Kimberly Powell's survivors and family for an accident that reasonable minds could only conclude she could have avoided by the exercise of that degree of care we are all obliged to exercise in our daily lives.

We therefore overrule appellant's sole assignment of error and affirm the judgment of the trial court dismissing this action against Conrail.

*Judgment affirmed.*

KOEHLER, P.J., and HENDRICKSON, J., concur.

JONES, J., concurs separately.

JONES, J., concurring. Appellant presents a novel theory of recovery, *i.e.,* "reliable unreliability." Essentially appellant argues that because the crossing gates malfunctioned regularly, and their unreliability was notorious, motorists crossing the Conrail tracks were justified in assuming that another malfunction was occurring, thereby permitting such motorists to drive around the downed crossing gates in safety. Appellant then claims that decedent's view of the coming train was obstructed. The theory of "reliable unreliability" has no validity, in my opinion, but even if it did, there is no evidence that appellant's decedent was aware of the regular malfunctioning of the crossing gates, that she therefore relied upon such unreliability, or that any obstruction to her view was attributable to negligence on the part of Conrail, or a proximate cause of the collision. It is readily apparent that this young mother simply drove around the crossing gate because the vehicle immediately ahead of her had

done so. At that precise moment the train must have been clearly visible, regardless of any obstruction down the track, because it would have been only a few feet away from her auto. It is therefore clear that there was only one proximate cause of the accident, the negligence of the driver.