Plaintiff-appellant, Christine Clodgo, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Kroger Pharmacy ("Kroger") and Dominic Marchese, R.Ph. Because the trial court did not err in granting summary judgment, we affirm the judgment of the trial court.
On the morning of July 22, 1995, plaintiff went to see John F. Williams, M.D., for treatment of what she thought was an infection. Dr. Williams wrote two prescriptions to treat her infection: Nitrofurantoin, an antibiotic, and Pyridium, an analgesic. Plaintiff was to take one capsule of Nitrofurantoin four times a day for a period of ten days. She was to take one capsule of Pyridium four times a day for a period of five days. Neither prescription had any refills.
After plaintiff received the prescriptions, Marchese, a pharmacist, filled them for her at the Kroger pharmacy where he worked. Plaintiff went home and took one capsule of each drug around noon. Over the next three or four hours, she took several more Nitrofurantoin capsules, speculating that she took four Nitrofurantoin pills between the time she received them and four o'clock that afternoon. She also took one more Pyridium capsule around four or five o'clock that afternoon.
After taking the drugs, plaintiff began to experience nausea, lightheadedness, dizziness, and vomiting. Around four o'clock that afternoon, she called Kroger because she was concerned about the amount of pills she was taking. Plaintiff talked to Marchese, who told her that the instructions on the Nitrofurantoin bottle were incorrect. Instead of the dosages Dr. Williams had prescribed, the instructions on the bottle of forty Nitrofurantoin capsules said "Take 1 capsule(s) by mouth for four days until finished." Plaintiff also called her doctor, who told her the proper dosage. The symptoms nonetheless remained for another day or two, but then subsided, as did the infection. As a result of the symptoms, plaintiff missed two days of work.
Plaintiff ultimately filed a complaint against Kroger and Marchese, alleging claims of negligence and negligent supervision against defendants. After extensive discovery problems between plaintiff and defendants, defendants moved for summary judgment on all counts of plaintiff's amended complaint. The trial court granted the motion, finding that defendants were not negligent in dispensing the Pyridium, as the instructions on that bottle matched the prescription. As to the Nitrofurantoin prescription, the trial court found that plaintiff offered no expert medical testimony to refute Dr. Williams' testimony that the symptoms plaintiff suffered were side effects that would normally occur with Nitrofurantoin. The trial court thus found that, on the evidence before it, reasonable minds could only conclude plaintiff's injuries were caused independently of Marchese's admitted negligence in misstating the instructions on the Nitrofurantoin bottle. Plaintiff's claims of negligent supervision and for punitive damage claims similarly were dismissed.
Plaintiff timely appeals, assigning the following errors:
 "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND FINDING THERE TO BE NO GENUINE ISSUE OF MATERIAL FACT AS TO THE LIABILITY OF DEFENDANTS.
 "II. THE TRIAL COURT ERRED IN REFUSING TO CONSIDER THE AFFIDAVIT OF PLAINTIFF'S EXPERT, JILL JOLLIFE, IN THE SUMMARY JUDGMENT PROCESS.
 "III. THE TRIAL COURT ERRED IN REFUSING TO ALLOW PLAINTIFF TO DISCOVER KROGER COMPANY'S RECORDS."
Plaintiff's second assignment of error contends that the trial court erred in striking the report of Jill Jolliffe, a registered pharmacist, and in refusing to consider it in connection with plaintiff's response to defendants' summary judgment motion.[1] The Jolliffe report concluded that the care provided to plaintiff was below that of a minimally competent pharmacist and "caused the damages suffered" by plaintiff.
Pursuant to Civ.R. 56(E), the trial court found that the Jolliffe report was not proper because (1) it did not state that the author was competent to testify to the facts and opinions contained in the report, or that the facts and opinions were made to the best of Jolliffe's knowledge, (2) Jolliffe was not a medical doctor and therefore was not competent to testify regarding causation of medical injuries, and (3) a notary public failed to attest to the fact that Jolliffe was duly sworn before signing the report.
Civ.R. 56(C) specifies the types of documents that may be used to support a motion for summary judgment, stating:
 "Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."
"As Civ.R. 56(C) expressly provides, no evidence or stipulation may be considered except as stated in the rule." Martin v.Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 88. Although failure to move to strike or otherwise object to do cumentary evidence submitted in opposition to a motion for summary judgment may waive any error in considering the evidence under Civ.R. 56(C), Stegawski v. Cleveland AnesthesiaGroup, Inc. (1987), 37 Ohio App.3d 78, paragraph one of the syllabus, defendants filed a Motion to Strike which argued that the reports should not be considered. Recognizing that the Jolliffe report is not in itself proper evidence under Civ.R. 56(C), plaintiff argues that the report is an affidavit.
"A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit." Benedict v.Peters (1898), 58 Ohio St. 527, 536-537, citing Morris v. State
(1877), 2 Texas App. 502. "It is essential to the validity of [an] affidavit that it be sworn to by the affiant before some person who has authority to administer oaths, and if such affidavit shows upon its face that it is not sworn to before a person authorized by law to administer the oath it has no legal force whatever." State v. Lanser (1924), 111 Ohio St. 23, 27; see, also, Benedict, supra, at 537 (finding no affidavit because all the requirements of an affidavit were present "except the essential one that the individual purporting to make the affidavit does not appear to have been sworn, or to have made the affidavit before and authority competent to take it"); Tokles Son, Inc. v. Midwestern Indemn. (1992),65 Ohio St.3d 621, 630 n. 3. The Jolliffe report was signed by a notary public but does not state that Joliffe was sworn when she signed the report. Without such a statement, the Joliffe report is not an affidavit and is not proper evidence for summary judgment purposes.
Moreover, Civ.R. 56(E) also requires that an affidavit affirmatively show that the affiant is competent to testify to the matters contained in the affidavit. Here, plaintiff had to present expert medical testimony to establish causation because the cause for the injuries she claimed is not within common knowledge. Darnell v. Eastman (1970), 23 Ohio St.2d 13,261 N.E.2d 114, syllabus. Because the Jolliffe report attempts to show defendants' negligence caused plaintiff's injuries, the affidavit had to contain some evidence to affirmatively demonstrate that the affiant was qualified to testify as an expert.
We need not decide whether a pharmacist may be a competent medical expert on this issue of causation on plaintiff's case, as the Jolliffe report did not provide the trial court with any basis to conclude Jolliffe possessed such expertise. The report does not mention Jolliffe's underlying "knowledge, skill, experience, training, or education regarding the subject matter of the testimony" presented. Evid. R. 702. Instead, the Jolliffe report simply states that Jolliffe is a registered pharmacist, with nothing more to suggest the subjects encompassed by her degree, or the special training or experience which would allow her to render expert testimony about causation. Alexander v. Mt. Carmel Medical Center (1978),56 Ohio St.2d 155, 160 (finding that it "is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of his qualifications"); Hall v. Fairmont Homes, Inc. (1995), 108 Ohio App.3d 138,145 (stating that an expert's affidavit must set forth the expert's credentials and facts to support the expert's opinion which would be admissible into evidence). Cf.Burke v. Gammarino (1995), 108 Ohio App.3d 138, 145 (qualifying lawyer as an expert in real estate law when it was shown that he devoted nearly sixty percent of his practice to real estate, lectured extensively on the topic, and had been qualified as an expert in real estate law many other times). Jolliffe's simply stating that she is a registered pharmacist does not satisfy the requirement that she is qualified through specialized knowledge, skill, experience, training, or education, to address what typically requires expert medical testimony.Ratliff v. Morehead (May 19, 1998), Scioto App. No. 97CA2505, unreported.
In her March 8, 1998 memorandum contra to defendants' March 2, 1998 motion to strike, plaintiff attached a revised affidavit from Jolliffe that attempted to cure the defects defendants noted in their motion to strike. In deciding defendants' motion to strike, however, the trial court did not take the revised affidavit into consideration; the court found the revised affidavit was untimely filed, as the non-oral hearing date set for defendants' motion was March 2, 1998. Civ.R. 56(C) ("[t]he adverse party prior to the day of hearing
may serve and file opposing affidavits"). (Emphasis added.) Whether to consider the untimely filed affidavit was within the discretion of the trial court, and that decision will not be reversed absent an abuse of that discretion. Stanger v.Waterford Tower Co. (Aug. 25, 1994), Franklin App. No. 94APE03-371, unreported (1994 Opinions 3814); Ryan v. Jones
(Oct. 26, 1993), Franklin App. No. 93AP-892, unreported (1993 Opinions 4559); Powell v. Consolidated Rail Corp. (1986),31 Ohio App.3d 219, 220. The record does not provide any reason for plaintiff's untimely filing and, thus fails to show an abuse of discretion. Accordingly, the trial court did not err when it granted defedants' motion to strike the Jolliffe report and to not consider it in deciding defendants' motion for summary judgment.
Plaintiff's second assignment of error is overruled.
Plaintiff's first assignment of error asserts the trial court erred in granting defendants' summary judgment motion, because genuine issues of material fact exist.
In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the nonmoving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wing v. Anchor Media, Ltd. ofTexas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett [1986], 477 U.S. 317, approved and followed).
Through the deposition testimony of plaintiff's own treating physician, Dr. Williams, defendants demonstrated that plaintiff's symptoms that typically can occur from the medication plaintiff took, even when taken in its proper dosage. Defendants thus had met their burden to show that the injuries plaintiff sustained were not the proximate cause of defendants' negligence. The burden then shifted to plaintiff to demonstrate a genuine issue of material fact as to the causation of her damages. Wing, supra, at 111; Bruni, supra, at 131.
Without her two reports, plaintiff failed to present any expert medical testimony to establish a disputed material fact regarding proximate cause. As a result, the trial court properly granted summary judgment in favor of defendants, properly finding that no genuine issue of material fact existed. See Pullins v. Strieby (Nov. 20, 1998), Montgomery App. No. 17065, unreported ("[w]hen a party to a medical malpractice case presents expert testimony supporting a motion for summary judgment, and the non-moving party fails to produce the requisite expert testimony to establish the elements of its claim, summary judgment is proper"). Accordingly, plaintiff's first assignment of error is overruled.
Our disposition of plaintiff's first and second assignments of error renders plaintiff's third assignment of error moot. App. R. 12(A). Specifically, plaintiff's third assignment of error contends that the discovery requested and denied would be relevant to plaintiff's claims for negligent supervision and punitive damages. Because, however, summary judgment was properly entered for Marchese and he could therefore not be held liable to plaintiff on any of those claims, the negligent supervision claim was properly dismissed by the trial court. See Strock v. Pressnell (1988), 38 Ohio St.3d 207, 217 ("an underlying requirement in actions for negligent supervision * * * is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person"); see, also,Byrd v. Faber (1991), 57 Ohio St.3d 56, 58. Because the claims to which plaintiff alleges discovery would be relevant are no longer valid, the assignment of error is moot.
Having overruled plaintiff's first and second assignments of error, rendering her third assignment of error moot, we affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN, J., and LAZARUS, P.J., concur.
[1] The trial court also struck the report of Dr. Richard Mague, a psychologist, who also saw the plaintiff. Plaintiff, however, does not raise an error regarding the Mague report and we thus will not address it.