JOURNAL ENTRY OPINION
{¶ 1} Appellant, Julius Szabo ("Szabo"), appeals the trial court's decision in consolidated cases granting summary judgment and awarding attorney fees to appellees Robert Nosal ("Nosal"), Grubb Ellis Company ("Grubb Ellis"), and Alec Pacella ("Pacella") (collectively referred to as "appellees").
 {¶ 2} This case arises from the sale of certain mobile home parks owned by Szabo and Szabo's failure to pay commissions to the brokers, who are the appellees. Prior to entering into a written agreement with Nosal and Grubb Ellis, Szabo was informally using the brokerage services of Pacella and Terry Coyne (who were both brokers affiliated with Grubb Ellis) in connection with finding a seller or sellers to purchase his mobile home parks. In April 2002, Szabo entered into a purchase agreement to sell the mobile home parks to Evergreen Communities, LLC or assignee for the purchase price of $9,325,000. However, the sale did not close as a result of Evergreen Communities, LLC or assignee's inability to obtain sufficient investment funds.
 {¶ 3} After the sale did not close and sometime in August 2002, Szabo entered into a written agreement titled "Exclusive Right to Sell Agreement For Sale of Real Property" ("written agreement") with Nosal (who was a broker affiliated with Grubb 
Ellis). Pursuant to the written agreement, Nosal and Grubb 
Ellis were granted the exclusive right to sell Szabo's mobile home parks for a period of 12 months and such right was cancelable after six months by either party. Also pursuant to the written agreement, Szabo was to refer to Nosal all inquiries and offers received concerning the mobile home parks and Nosal was to receive certain commissions of any sale based on a fee schedule. The written agreement further provided that certain prospects were exceptions to the fee schedule; that is, if Szabo sold the mobile home parks to any of the entities or individuals that were excluded, then Nosal could not collect a commission from such sale. Those exceptions were listed in Szabo's handwriting in paragraph 14 of the written agreement and, in particular to this appeal, included the name "Robyn Spraker."
 {¶ 4} After the written agreement was signed, Nosal and Pacella asked Szabo to make disclosures as to any inquiries or offers on the mobile home parks, but Szabo did not disclose any such inquiries or offers. In December 2002, Grubb Ellis learned of an impending sales transaction of five of the six mobile home parks between Szabo and Evergreen Communities, LLC or assignee, 1518 N. Avon Street, Burbank, California 91505 ("Evergreen") and asked Szabo to provide disclosure of the purchase agreement for the sale. Szabo did not provide such purchase agreement.
 {¶ 5} As a result, Nosal and Grubb Ellis filed brokers' lien affidavits in multiple counties in Ohio covering all six of the mobile home parks. Due to the liens, and in coordination with Chicago Title and Szabo, a statutorily mandated escrow account in the amount of $186,000 was set up and held with Chicago Title during the pending litigation titled Robert C. Nosal, Broker andGrubb Ellis Company vs. Julius J. Szabo, bearing case number 494416, and filed in the Cuyahoga County Court of Common Pleas. The complaint in case number 494416 alleged breach of the written agreement for Szabo's failure to pay Nosal and Grubb Ellis commission and real estate fees and also alleged that the funds held in escrow should be released to Nosal and Grubb Ellis. In response, Szabo denied liability under the written agreement and asserted a counterclaim, alleging that the retention of the funds in escrow deprived him of his fully expected net proceeds from the closing of the sale with Evergreen and constituted the filing of false liens.
 {¶ 6} In July 2003, Szabo filed a complaint against Pacella, titled Julius Szabo v. Alec Pacella, bearing case number 505451, in the Cuyahoga County Court of Common Pleas, alleging that Pacella fraudulently induced Szabo to enter into the written agreement with Nosal and Grubb Ellis, which Szabo believed he would not have to pay the commission fees to Nosal and Grubb 
Ellis if a sale was made.
 {¶ 7} Discovery problems arose and, despite being compelled to do so, Szabo never produced the purchase agreement between him and Evergreen. The trial court consolidated case numbers 494416 and 505451 and appellees moved for summary judgment on October 20, 2003. On November 20, 2003, Szabo filed his response to appellees' motion for summary judgment, but did not provide a certificate of service anywhere in his response. On November 28, 2003, the trial court granted summary judgment to appellees, finding that Szabo breached the written agreement and that the escrow funds held by Chicago Title be released to Nosal and Grubb Ellis to be applied in partial satisfaction of damages for Szabo's breach of the written agreement. The trial court also dismissed Szabo's counterclaim and set a hearing on appellees' motion for attorney fees and expenses pursuant to R.C.1311.88(C).
 {¶ 8} Sometime after the trial court granted summary judgment, appellees learned that Szabo had filed a response to their motion for summary judgment. Upon discovering that they had never received service of Szabo's response, counsel for appellees obtained a time-stamped copy of Szabo's response to their motion for summary judgment by facsimile. Szabo's response brief did not contain a certificate of service, nor did Szabo subsequently file a proof of service with the clerk of courts certifying that the response brief had been served to appellees. On December 4, 2003, appellees moved to strike Szabo's response to their motion for summary judgment, arguing that although the trial court granted summary judgment in their favor, the trial court should not have considered Szabo's response and, for the purposes of preserving the record on appeal, Szabo's response should be stricken from the record. On December 10, 2003, the trial court denied appellees' motion to strike.
 {¶ 9} The trial court also conducted a hearing on appellees' claim for attorney fees and costs and, on December 19, 2003, the trial court entered an award of attorney fees in the amount of $54,127 and expenses in the amount of $3,661.60 to appellees. Szabo now appeals, asserting that the trial court erred in granting summary judgment to appellees. Appellees assert two cross-assignments of error, pursuant to App.R. 3(C)(2), which allows an appellee to file cross-assignments of error without filing an actual notice of cross-appeal.
 {¶ 10} Ordinarily, where the appellee does not file a notice of cross-appeal, this court would pass upon the review of any of appellee's assignments of error, as such assignments of error are only for the limited purpose of preventing the reversal of the judgment under review. R.C. 2505.22; see, also, Duracote Corp.v. Goodyear Tire Rubber Co. (1983), 2 Ohio St.3d 160,443 N.E.2d 184 (cross-assignments of error by an appellee who has not appealed may be considered only when necessary to prevent a reversal); Chapman v. Ohio State Dental Bd. (1986)33 Ohio App.3d 324, 515 N.E.2d 992 (such assignments of error are only for the limited purpose of preventing the reversal of the judgment under review). However, under the peculiar procedural circumstances that occurred in the trial court below, the consideration of appellees' first cross-assignment of error is virtually dispositive of this appeal and will be addressed first.
 {¶ 11} Appellees argue, in their first cross-assignment of error, that the trial court should have stricken Szabo's response, with attached affidavits, to their motion for summary judgment because Szabo failed to provide at any time a certificate or proof of service as required pursuant to Civ.R. 5(D). Civ.R. 5 provides in pertinent part as follows:
 {¶ 12} "* * *
 {¶ 13} "(D) Filing. All papers, after the complaint, required to be served upon a party shall be filed with the court within three days after service, but depositions upon oral examination, interrogatories, requests for documents, requests for admission, and answers and responses thereto shall not be filed unless on order of the court or for use as evidence or for consideration of a motion in the proceeding. Papers filed with the court shallnot be considered until proof of service is endorsed thereon orseparately filed. The proof of service shall state the date and manner of service and shall be signed in accordance with Civ. R. 11." (Emphasis added.)
 {¶ 14} The two applicable Staff Notes to Civ.R. 5(D) and this issue of proof of service, provide as follows:
 {¶ 15} "STAFF NOTE: 1970
 {¶ 16} "RULE 5(D) FILING.
 {¶ 17} "The filing of the subsequent pleading, written motion, or other important paper under Rule 5(D), although obviously very important for record purposes, is a secondary act. Rule 5(D) requires that the particular paper be filed within three days of the service of the paper. The rule also requires that the attorney filing the paper give proof of service of the paper. Proof of service might be a written endorsement (at the bottom of the paper), by the attorney who files the particular paper, of the date and method of service of the copy of the paper. Ordinarily, inasmuch as service of the copy of the paper is complete upon delivery or posting in the mail, the burden is on the opposite party to show that he did not receive a copy of the paper. In the event, however, that proof of service isabsent from the paper filed, the court will not consider thepaper filed. The requirement of endorsement of proof of service is based on Franklin County Court of Common Pleas Rule V, paragraph three.
 {¶ 18} "STAFF NOTE: 7-1-71 AMENDMENT
 {¶ 19} "RULE 5(D) FILING.
 {¶ 20} "Rule 5(D) governs the filing with the court of pleadings and papers subsequent to the filing of the original complaint. Prior to the amendment the rule had provided that a paper or pleading subsequent to the complaint which had been filed with the court would not be considered "unless" proof of service had been endorsed thereon. The amendment of the rule now provides that `Papers filed with the court shall not be considered until proof of service is endorsed thereon or separately filed.' Prior to the amendment an attorney who, for example, filed an answer with the court but failed to endorse proof of service thereon might technically have been considered to be in default of answer because his answer would not be considered `unless' proof of service had been endorsed thereon. To avoid such possible technical interpretation, the word `unless' has been changed to `until' so that an attorney who fails to endorse service thereon will have an opportunity subsequently to endorse proof of service on the paper or separately file the necessary proof of service in order to correct his clerical error." (Emphasis added.)
 {¶ 21} Unlike the instances where an opposing party has the burden to prove that it did not receive service of a filing even though there was a properly signed proof of service, where there is no proof of service either attached to the filing or separately filed with the trial court, the trial court simply may not consider the filing. Civ.R. 5(D); Manor Care HealthcareCorp. v. Cook (Jan. 7, 1993), Cuyahoga App. No. 64003 (affirming the trial court's decision to not consider plaintiff-appellant's brief in opposition to defendant-appellee's motion for summary judgment because the brief, with the attached affidavits, had no completed certificate of service endorsed thereon nor was a certificate of service separately filed in accordance with Civ.R. 5(D)); cf. Clay Hyder Trucking Lines, Inc. v. Riley (1986),16 Ohio App.3d 224, 225, 475 N.E.2d 183 (holding that a notice of voluntary dismissal pursuant to Civ.R. 41(A)(1)(a) is an exception to the general rule because a plaintiff has "an absolute right to terminate his cause of action voluntarily and unilaterally at any time prior to commencement of trial" and the court refused to "encumber the right to one voluntary and unilateral dismissal by imposing on plaintiffs the requirement to serve notice upon opposing counsel before the dismissal can become effective"). Here, Szabo failed to include a certificate or proof of service when he filed his response, with attached affidavits, to appellees' motion for summary judgment. In addition, Szabo failed to separately file a certificate or proof of service with the trial court. According to the strict mandates of Civ.R. 5(D), the trial court should not have considered Szabo's response to appellees' motion for summary judgment and such response should have been stricken from the record.
 {¶ 22} Szabo relies upon Powell v. Consolidated Rail Corp.
(1986), 31 Ohio App.3d 219, 510 N.E.2d 818, for the proposition that a trial court's consideration of affidavits that were not properly served which does not prejudice a party is not an abuse of discretion. Although Szabo claims that Powell is directly on point and is an "almost identical situation" to the instant matter because the trial court noted in a nunc pro tunc entry that the contents of the subject affidavits did not affect the summary judgment decision, nowhere in the Powell opinion does it provide that the subject affidavits were filed without any proof or certificate of service endorsed thereon or separately filed. Instead, the opposing party argued that he was not timely served with the subject affidavits prior to the argument of the summary judgment motion. Powell, 31 Ohio App.3d at 220,510 N.E.2d 818. Powell specifically provides as follows:
 {¶ 23} "In deciding a motion for summary judgment, a trial court does not abuse its discretion by considering affidavits which are filed and served on opponents in an untimely manner, but in good faith." 31 Ohio App.3d 219, 510 N.E.2d 818, paragraph one of the syllabus.
 {¶ 24} Unlike Powell, appellees do not argue that they were not timely served with Szabo's response, but that Szabo's response should not have been considered by the trial court nor included as part of the record. Despite the fact that it would appear that appellees suffered no prejudice by the court's apparent consideration of Szabo's response because the trial court granted summary judgment in their favor, appellees, on appeal, are prejudiced by the trial court's acceptance of Szabo's response, which is now part of the record, integral to Szabo's appeal and, ultimately, part of this court's review of the trial court's motion for summary judgment. Because the trial court should not have considered or entertained Szabo's response, with attached affidavits, to appellees' motion for summary judgment, Szabo's response should have been stricken from the record. Thus, appellees' first cross-assignment of error is well-taken.
 {¶ 25} Since Szabo's response, with affidavits attached, to appellees' motion for summary judgment should have been stricken and not considered by the trial court, this court must determine whether the trial court properly granted appellees' unopposed motion for summary judgment. "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Camardo v. Reeder, Cuyahoga App. No. 80443, 2002-Ohio-3099, ¶ 11. When a motion for summary judgment is made and supported as provided in Civ.R. 56, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue." Id. at ¶ 13.
 {¶ 26} Here, appellees attached to their motion for summary judgment the written agreement entered into and signed by Nosal and Szabo. According to the written agreement, Szabo was required to inform appellees of any inquiries or offers on the mobile home parks and appellees were to receive a certain percentage of the total consideration on any sale. In the event that the mobile home parks were sold to any of the entities or individuals listed in the exception list in the written agreement, appellees were to receive a certain percentage of the total consideration within a certain time frame from the date of the written agreement. When Szabo failed to disclose any inquiries or offers on the mobile home parks and after Grubb Ellis learned that Szabo entered into a purchase agreement with Evergreen (which was not an entity listed on the exception list pursuant to paragraph 14 of the written agreement) for five of the six mobile home parks, appellees filed brokers' liens covering all six of the mobile home parks to protect appellees' commissions and filed suit for breach of contract and to release the funds held in escrow to satisfy the fees owed to appellees for the sale.
 {¶ 27} Because Evergreen was not listed as an exception, the trial court properly concluded that the written agreement, which was signed by Szabo, obligated him to pay appellees their fees in accordance with the fee schedule when he entered into the purchase agreement with Evergreen for the sale of five of the six mobile home parks. Moreover, appellees followed R.C. 1311.88 when they filed their broker's liens to protect their commission fees, and the funds held in escrow by Chicago Title were properly released to appellees in partial satisfaction of their fees owed for Szabo's breach of contract by entering into the purchase agreement with Evergreen for the sale of five of the six mobile home parks. It cannot be said, based on the clear and unambiguous language in the written agreement, that the trial court erred in granting Nosal's and Grubb Ellis's motion for summary judgment on their breach of contract claim and suit to release the funds held in escrow. The trial court also properly granted summary judgment to appellees on Szabo's counterclaim because he failed to present any evidence that the brokers' liens were filed falsely.
 {¶ 28} Likewise, because Szabo had the burden of production to prove his claim of fraudulent inducement against Pacella, the trial court properly granted summary judgment to Pacella because Szabo failed to produce any evidence of fraudulent inducement. See, e.g., Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Thus, the trial court's order granting summary judgment to appellees is affirmed.
 {¶ 29} Separate from Szabo's challenge to the trial court's order granting appellees' summary judgment is Szabo's argument that the trial court's assessment of attorney fees awarded to appellees was improper. Szabo argues that while R.C. 1311.88(C) allows a prevailing party in an action based on a broker's lien to recover its cost and reasonable attorneys fees, the instant action was one for breach of contract and to enforce an "equitable lien in the escrowed funds held by Nominal Defendant Chicago Title." Although Szabo agreed to the reasonableness of the attorney fees, time, and rates as submitted by appellees, Szabo argues on appeal that such an award may only be assessed where the purpose of the action is to enforce a lien, such as a foreclosure. However, Szabo's argument is without merit.
 {¶ 30} R.C. 1311.88(C) provides:
 {¶ 31} "(C) In an action based on a broker's lien, a court may assess the nonprevailing parties with costs and reasonable attorney's fees incurred by the prevailing parties. The court shall equitably apportion the assessed costs and attorney's fees among all responsible nonprevailing parties."
 {¶ 32} Here, the "action" was based on both breach of contract and brokers' liens, which was later converted by the parties after the liens were released into an escrow account established in connection with Chicago Title and Szabo to allow Szabo's property to be transferred to Evergreen. The instant "action" is based, in part, on brokers' liens that were filed by appellees to preserve their commission fees and, in part, based on Szabo's failure to honor the written agreement to which he signed to pay those commission fees. Because there is nothing in R.C. 1311.88(C) that would suggest that the trial court may not award attorney fees on an action originally based in part on brokers' liens, the trial court did not err in awarding appellees such attorney fees and expenses incurred.
 {¶ 33} Finally, appellees assert in what they call their "second cross-assignment of error," that this court approve an award of their attorney fees and costs for the defense of this appeal pursuant to R.C. 1311.88(C) and remand this action to the trial court for the limited purpose of allowing the trial court to determine the amounts of such an assessment. Appellees "second cross-assignment of error" is not well-taken.
 {¶ 34} App.R. 23 provides as follows:
 {¶ 35} "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."
 {¶ 36} Appellees here have not filed a motion seeking fees based on the alleged frivolity of Szabo's appeal. Because there is no such motion pending before this court, there can be no determination that Szabo's appeal is indeed frivolous and no award of attorney fees to appellees in this action. Moreover, this court lacks authority to remand this matter to the trial court for the sole purpose of assessing appellees' attorney fees in defending this appeal. Thus, appellees' second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, J., and Rocco, J., Concur.