FLYNN, Appellant,

v.

FLYNN, Appellee.

[Cite as *Flynn v. Flynn*, 196 Ohio App.3d 93, 2011-Ohio-4714.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2011–01–002.

Decided Sept. 19, 2011.

94

Statman, Harris & Eyrick, L.L.C., Thomas S. Sapinsley, for appellant.

M. Lynn Lampe, for appellee.

PIPER, Judge.

{¶ 1} Plaintiff-appellant, Todd Charles Flynn, appeals the judgment of the Butler County Court of Common Pleas, Division of Domestic Relations, regarding

his divorce from defendant-appellee, Christie Lynn Flynn. We affirm the judgment in part and reverse in part and remand the cause for further proceedings.

{¶ 2} Todd and Christie were married in June 2006 and had one child born of the marriage. The parties separated during 2009, and Todd later filed for divorce. Todd continues to reside in Ohio in his home located on Suzi Circle, while Christie moved to West Virginia.

{¶ 3} The contested divorce was heard over two separate days in October and November. Before the hearings, the parties agreed to a shared-parenting plan, as well as several stipulations. Among these stipulations, the parties agreed that (1) prior to the marriage, Todd was the sole owner of a house on Suzi Circle, (2) Todd is the titled owner of the real estate, (3) as of the date of the marriage, there was a mortgage loan to PNC Bank for $131,000, (4) as of December 31, 2009, the loan had an outstanding balance of $103,000, (5) during the term of the marriage, the loan was paid down by the sum of $28,000 by marital effort, and (6) Todd shall retain the real estate subject to any equitable distribution that the court would award.

{¶ 4} The parties later stipulated to the division of certain personal property and agreed that some of the property division would be determined by the trial court. Todd also agreed to pay Christie $1,587 from an IRA account he owned. During the November hearing, the parties agreed that both would retain their own vehicles, free and clear of each other's interests.

{¶ 5} Regarding the shared-parenting plan, the parties agreed to a visitation schedule and that Todd would pay child support of $388.45 per month. The parties made several handwritten changes to the shared-parenting plan, with each party initialing the changes. These changes involved the child's school placement, when extra contact between themselves and their child would occur, how child-care placement would be decided, as well as parenting time during holidays, extended time, and vacations.

{¶ 6} During the two days of hearings, the trial court heard testimony from the parties and accepted exhibits from both. The trial court then issued its decision and ordered that (1) all parts of the parenting plan were adopted and were the final order of the court, (2) child support was set at $648.34 per month, and (3) the equity in the home should be divided equally between the parties. The trial court also ordered that Todd receive all the household goods and furnishings and that in return, he pay Christie $5,000. After noting that Todd had filed a contempt motion, the trial court denied the motion without explanation. Todd now appeals the trial court's decision, raising the following assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} "The trial court erred to the prejudice of appellant when it equally divided between the parties the entire equity in the Suzi Circle property."

{¶ 9} Todd argues in his first assignment of error that the trial court erred in ordering him to pay Christie $43,000 in equity from the Suzi Circle house.

{¶ 10} Prior to making an equitable division of marital property, a trial court must determine the value of marital assets. *Donovan v. Donovan* (1996), 110 Ohio App.3d 615, 620–621, 674 N.E.2d 1252. "Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances." *Baker v. Baker* (1992), 83 Ohio App.3d 700, 702, 615 N.E.2d 699, citing *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 221–222, 9 OBR 529, 459 N.E.2d 896. Thus, a trial court has broad discretion in determining the value of marital property. *Donovan* at 621, 674 N.E.2d 1252. A trial court's decision regarding property valuation will not be disturbed on appeal absent an abuse of discretion. Id. An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. However, in determining the value of marital property, the trial court must have sufficient evidence to justify and support the figure that it establishes. *McCoy v. McCoy* (1993), 91 Ohio App.3d 570, 575, 632 N.E.2d 1358. Therefore, "[w]hatever valuation the trial court chooses must be supported by competent, credible evidence." *Moore v. Moore*, Clermont App. No. CA2006–09–066, 2007-Ohio-4355, 2007 WL 2410543, ¶ 45, citing *McCoy* at 575, 632 N.E.2d 1358.

{¶ 11} The trial court found that the parties had contributed equally with their own money, both before and after the marriage, to improving the Suzi Circle property. Despite the parties' agreement that the house was valued at $187,500 at the time of the divorce, the trial court found the value to be $190,000. The trial court then determined that the outstanding mortgage balance was $103,000 and that there was $87,000 in equity. The trial court ordered that Todd pay Christie half of that equity, or $43,500. We find this order an abuse of discretion because the trial court did not have any evidence before it to support the figures it established.

{¶ 12} "Under R.C. 3105.171, an increase in the value of separate property due to either spouse's efforts is marital property." *Middendorf v. Middendorf* (1998), 82 Ohio St.3d 397, 696 N.E.2d 575, paragraph one of the syllabus. However, R.C. 3105.171(A)(6)(a) states that " '[s]eparate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: * * * (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage." R.C.

3105.171(A)(4), defines passive income as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse."

{¶ 13} "The plain language of R.C. 3105.17(A)(3)(a)(iii) unambiguously mandates that when *either* spouse makes a labor, money, or in-kind contribution that *causes* an increase in the value of separate property, that increase in value is deemed marital property." (Emphasis sic.) *Middendorf* at 400, 696 N.E.2d 575.

{¶ 14} As previously stated, the parties agreed that the home's fair market value at the time of the divorce was $187,500. We are unable to determine why the trial court disregarded the parties' agreement and found the house valued at $190,000, because the trial court offered no explanation for its valuation. However, we are less concerned with the $2,500 difference in valuation than we are with the court's finding that the entire amount of equity in the home is marital property. While it is true that the outstanding mortgage at the time of divorce was $103,000, the trial court's order does not take into consideration that the home had substantial equity before the parties were married and that Todd owned the home since 1996, ten years prior to the parties' marriage.

{¶ 15} The parties stipulated that the mortgage was paid down by $28,000 by marital effort during the course of the marriage, but they did not stipulate to whether any appreciation in the home was passive or due to Christie's labor or monetary expenditure. During her testimony, Christie stated that she contributed her labor and money to the home because her father's flooring company had laid $25,000 worth of new flooring in the home and she had worked in the home to improve it.

{¶ 16} We note first that the new flooring was installed in 2005, a year before the parties were married. The parties also agreed that Todd paid $5,085 to Christie's father for the floors and that since the time of the divorce proceedings, and six years after installation, Christie's father has sent Todd an unpaid invoice for the remaining balance. During the hearing, the parties agreed to call the unpaid balance "a nonmarital claim" between Todd and Christie's father.

{¶ 17} Regarding Christie's work in the home after the marriage, the trial court did not have any evidence before it that Christie's work *caused* an increase in the value of the home. Christie testified and submitted a list of "home improvements" she made during the marriage, which included general painting, wallpapering, changing decorative fixtures, removing trees, and landscaping. However, there was no testimony or other evidence that these actions did in fact increase the value of the home or were more significant than general maintenance or cosmetic changes to the home. The trial court heard testimony, and had before it appraisals performed in the years preceding the marriage, that the home was valued between $182,000 and $190,000, as well as the parties' stipulation at the hearing that the value at the time of their divorce was $187,500.

{¶ 18} There is no evidence in the record to suggest that the equity in the home was anything but passive income and appreciation acquired from separate property by Todd during the marriage. As of the date of the marriage, the mortgage was $131,000, and the house had been appraised at $190,000 in 2001. Even if we were to consider the lower tax value in the year the parties were married, $182,440, Todd had a significant amount of premarital equity in his home, an amount exceeding $51,000. During the marriage, the mortgage was paid down to $103,000 by marital effort, thus the parties' marital equity in the real estate was $28,000. The other equity in the home is Todd's separate property and should not have been divided between the parties.

{¶ 19} We also note that according to R.C. 3105.171(D), "the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." The trial court did not make any required findings or explain what factors it took into consideration when awarding Todd's separate property to Christie.

{¶ 20} Having found an abuse of discretion, we sustain Todd's first assignment of error, and we remand this issue to the trial court for a new trial on the issue involving a proper division of equity, taking into consideration Todd's separate property.

{¶ 21} Assignment of Error No. 2:

{¶ 22} "The trial court erred to the prejudice of appellant in entering its decision before the expiration of its own deadline for appellant to submit a post trial memorandum."

{¶ 23} Todd argues in his second assignment of error that the trial court erred by not considering his memorandum and by issuing a decision before the deadline the trial court gave him to submit the memorandum.

{¶ 24} At the end of the hearing, Christie's attorney submitted case law on the equity issue discussed in Todd's first assignment of error. Because Todd's attorney had not been previously provided a copy of this case law, the trial court allowed Todd's counsel to review the cases and produce his own case law specific to the equity issue. The court then gave Todd until November 15, 2010, to file a memorandum with the court. However, five days before that deadline expired, the trial court issued its decision. By deciding the issue well in advance of the expiration of the deadline that the court itself had set for Todd to submit a memorandum, the court undermined Todd's opportunity to participate meaningfully, as well as the trust the parties placed in the trial court to resolve the issues

being litigated. However, we find it unnecessary to determine whether such action rises to the level of an abuse of discretion due to our ruling on the first assignment of error. The issue relating to the fact that trial court ruled before accepting Todd's memorandum is moot, and we need not address this assignment of error.

{¶ 25} Assignment of Error No. 3:

{¶ 26} "The trial court erred to the prejudice of appellant by ordering appellant to pay more child support than the amount as agreed to in the joint shared parenting plan, which such amount the trial court approved."

{¶ 27} Todd argues in his third assignment of error that the trial court erred in disregarding the parties' agreed child-support obligation and imposing a different amount.

{¶ 28} During the first day of the hearing, October 5, 2010, the parties agreed on their shared-parenting plan, and the trial court approved the plan as its final order. After questioning both parties regarding their intent and understanding, the trial court stated, "I accept that the parties are satisfied with the agreement they have reached on parenting, and I will approve the agreement, and it shall become the final order of the Court." Despite the fact that the parties agreed in the entry that Todd's child-support obligation would be $388.45 per month, the trial court ordered him to pay $643.34 per month. Again, the trial court offered no explanation as to why it dismissed the parties' agreement.

{¶ 29} We find two significant problems with the trial court's decision. First, the decision disregarded an agreement of the parties that had already been adopted by the court as of the October 5, 2010 hearing. While the trial court has discretion in setting child-support orders, we are mindful that "[s]ettlement and compromise are highly favored by the law. * * * 'In divorce actions, the parties can reach a settlement agreement as to the issues in lieu of litigating those issues before the domestic relations court.' *Perko v. Perko*, 11th Dist. No. 2001–G–2403, 2002–G–2435, and 2002–G–2436, 2003-Ohio-1877, 2003 WL 1871003, ¶ 27. * * * 'A settlement agreement eliminates the necessity of judicial resolution of a controversy as the parties reached a compromise regarding their respective rights and obligations.' Id." *Murray v. Murray*, Lucas App. No. L–09–1305, 2011-Ohio-1546, 2011 WL 1167177, ¶ 21. "When parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract. * * * So long as the court is satisfied that the settlement agreement reached by the parties was not procured by fraud, duress, overreaching or undue influence, the court has the discretion to accept it." *Bowman v. Bowman* (Jan. 11, 1999), Warren App. No. CA98–06–070, 1999 WL 8365, *3.

{¶ 30} The trial court did not state any reason for deviating from the parties' agreement, and there is no evidence on the record that the shared-parenting plan was entered into by fraud, duress, overreaching, or undue influence. In fact, both parties were represented by well-qualified counsel, and the parenting agreement was the result of extensive negotiations by the parties. The parties made several changes to the plan before it was given to and adopted by the court. However, no changes were made to the agreed amount of Todd's child-support obligations.

{¶ 31} Second, the trial court imputed a $62,000 salary to Todd, who at the time of the hearing was unemployed. "Although the standard of review for a trial court's child support determination is abuse of discretion, challenges to factual determinations upon which the child support order is based are reviewed using the 'some competent credible evidence' standard. Since a determination of gross income for support purposes is a factual finding, we must review the trial court's decision to determine whether it is supported by competent credible evidence." (Footnote omitted.) *Glassman v. Offenberg*, Cuyahoga App. Nos. 85838, 85863, and 87175, 2006-Ohio-3837, 2006 WL 2096587, ¶ 20.

{¶ 32} Because the child-support obligation was determined by the parties' agreement, the parties did not offer evidence regarding Todd's salary or earning potential. While Todd entered his past tax returns, these were used for purposes other than the child-support determination. Although the tax returns show that Todd earned approximately $62,000 in the years prior to his layoff, there was no evidence before the trial court regarding what Todd could expect to earn should he find other employment.

{¶ 33} We also note that the trial court heard testimony from Christie that at times before she quit working, she earned between $40,000 and $50,000. However, the trial court imputed only $15,080 to Christie when filling out the child-support worksheet. There was no evidence before the trial court that supports this imputed income. We are unable to ascertain from the record why the trial court dismissed the parties' agreement or why it imputed the salaries as it did. We are unable to determine that the trial court's ruling regarding child support was supported by some competent or credible evidence. We therefore sustain Todd's third assignment of error and remand the cause for a new trial on the issues involving a proper child-support calculation, taking into considerations any agreements the parties previously committed themselves to.

{¶ 34} Assignment of Error No. 4:

{¶ 35} "The trial court erred to the prejudice of appellant in equally dividing the joint bank account which balance included gifts of separate property to appellant."

{¶ 36} In his fourth assignment of error, Todd argues that the trial court erred by ordering him to pay Christie half the amount in the parties' joint checking account, because a portion of the funds therein were a gift from his parents.

{¶ 37} "After a divorce has been granted, the trial court is required to equitably divide and distribute the marital estate between the parties * * *. The trial court is vested with broad discretion in determining the appropriate scope of these property awards. * * * A reviewing court should measure the trial court's adherence to the test, but should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the court abused its discretion." *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 130–131, 541 N.E.2d 597.

{¶ 38} Todd's parents have written multiple checks to Todd, Christie, and their child that total $49,000. Todd testified that his parents gave him money in order to help with living expenses when he was laid off from work. In September and November 2009, Todd's parents gave him two checks for $2,000 each, which Todd deposited in the joint checking account he shared with Christie. After the parties separated, Todd withdrew approximately $7,000 from the joint checking account and transferred it into a newly opened individual checking account. The trial court ordered Todd to pay Christie half of that money.

{¶ 39} According to R.C. 3105.171(A)(6)(a)(vii), separate property includes, "any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." Clear and convincing evidence means that degree of proof that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Golick v. Golick* (Dec. 17, 2001), Clermont App. Nos. CA99–05–040, CA99–05–045, 2001 WL 1598290. "The party asserting that a gift was separate property bears the burden of showing an intention to make a separate gift—to benefit one spouse and exclude the other spouse from any rights and interest in the items as marital property." *Hook v. Hook*, 189 Ohio App.3d 440, 2010-Ohio-4165, 938 N.E.2d 1094, ¶ 20.

{¶ 40} After reviewing the record, we cannot say that the trial court abused its discretion by ordering Todd to pay Christie half of the money in the joint checking account. Todd failed to prove by clear and convincing evidence that the money was a gift, given only to him, at the exclusion of Christie. First, we note that a portion of the checks were made out to the parties' child, and that some of them were made to either Todd or Christie. Further, Todd treated the checks as joint property by depositing them into the parties' joint checking account, to

which Christie had access. Todd and Christie used the money to pay the couple's household expenses when Todd was laid off, so that both benefitted from the money. During his testimony, Todd explained that the checks were written by his parents, "as gifts and assistance, uh, to me, Christie, and my [child]."

{¶ 41} The record indicates that Todd's parents did not make separate gifts to Todd alone, for his exclusive benefit, nor did they exclude Christie from her rights and interest in the money as marital property. Todd's assignment of error is overruled.

{¶ 42} Assignment of Error No. 5:

{¶ 43} "The trial court erred to the prejudice of appellant in arbitrarily valuing the disputed household goods and ordering appellant to pay $5,000 to appellee for her interest in such property."

{¶ 44} Todd argues in his fifth assignment of error that the trial court erred by ordering him to pay $5,000 to Christie for her interest in the household goods.

{¶ 45} Although the parties were able to determine how some of their personal property would be divided, they litigated whether several items were marital property and, if so, who would retain possession. The trial court heard testimony and took evidence regarding these disputed items. However, instead of determining whether the items were marital property or how much they were worth, the trial court ordered that all the household goods and furnishings would stay with Todd and that he had to pay Christie $5,000 for her interest.

{¶ 46} As we've previously stated, prior to making an equitable division of marital property, a trial court must determine the value of marital assets. *Donovan v. Donovan* (1996), 110 Ohio App.3d 615, 620–621, 674 N.E.2d 1252. While we could assume that the trial court found the total value to be $10,000 by virtue of her $5,000 order in favor of Christie, our role as an appellate court does not allow such conjecture. The trial court's decision does not state the value of the property or how it determined that a $5,000 payment was equitable. The trial court limited its analysis to a practical determination that it would be easier for Todd to retain the items because he was not moving, whereas Christie would have to move the items to West Virginia. Although we do not necessarily find fault with this reasoning, the trial court failed to first determine whether the items constituted marital or separate property, and failed to place any value on the items.

{¶ 47} Perhaps the trial court did not place a value on the items because it had no evidence regarding the value of the items. Instead, the parties asked the trial court to determine whether items such as a coffeemaker, guitars, musical equipment, furniture, and a refrigerator were marital or premarital property, or

whether they were properly deemed gifts. The testimony and other evidence were offered so that the trial court could determine which personal items were separate nonmarital property. However the trial court failed to make necessary determinations to resolve the issues concerning the personal property.

{¶ 48} By awarding all the items to Todd and awarding $5,000 to Christie, the trial court's order is not supported by any evidence, competent, credible, or otherwise. Todd's fifth assignment of error is sustained, and we remand this issue to the trial court for a new trial to determine what property, if any, is marital and to then make a proper and equitable division.

{¶ 49} Assignment of Error No. 6:

{¶ 50} "The trial court erred to the prejudice of appellant when it denied appellant's contempt motion, which had not been served on appellee."

{¶ 51} Todd argues in his final assignment of error that the trial court erred by ruling on his contempt motion without first litigating the issue.

{¶ 52} On October 4, 2010, Todd filed a motion for contempt, arguing that Christie was not abiding by the terms of the shared-parenting agreement and was not letting him see his child. The record contains several failed attempts at service of the contempt motions, and Christie does not deny that she never received proper service. However, the last paragraph of the trial court's decision states, "[T]here are pending motions for contempt filed by Plaintiff on October 4, 2010. The motions for contempt are denied."

{¶ 53} According to Civ.R. 5(D), "papers filed with the court shall not be considered until proof of service is endorsed thereon or separately filed." "Unlike the instances where an opposing party has the burden to prove that it did not receive service of a filing even though there was a properly signed proof of service, where there is no proof of service either attached to the filing or separately filed with the trial court, the trial court simply may not consider the filing." *Nosal v. Szabo*, Cuyahoga App. Nos. 83974 and 83975, 2004-Ohio-4076, 2004 WL 1752916, ¶ 21.

{¶ 54} Christie argues that despite her never having received the motions, the issue was litigated, thus waiving any argument on appeal that the trial court made its decision prior to Christie's being served. Christie claims that because she attended the hearing and provided defenses to the motions, the trial court did not err in ruling on Todd's motion. However, there was no separate hearing held on the contempt motion, and no mention was made of the pending contempt motions at the October 5, 2010 or November 4, 2010 hearings. We fail to see how the trial court could have ruled on Todd's contempt motions without first taking the matter into consideration based on testimony or evidence offered into the

record.  See *Shell v. Shell,* Stark App. No.2010 CA 00026, 2010-Ohio-5813, 2010 WL 4884215 (reversing trial court's decision to summarily overrule wife's contempt motion without first holding a hearing).

{¶ 55} The trial court erred by deciding the contempt motion before the parties had an opportunity to properly litigate the issue.  Therefore, we sustain Todd's final assignment of error and remand this cause for a hearing on the contempt issue once it is properly served.

Judgment affirmed in part
and reversed in part,
and cause remanded for further proceed-
ings consistent with this opinion.

POWELL, P.J., and RINGLAND, J., concur.