# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY   COUNTY

| | | |
|---|---|---|
| ERB POULTRY, INC. | : | |
| | : | Appellate Case No. 26074 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CVF-248 |
| v. | : | |
| | : | |
| CEME, LLC, | : | (Civil Appeal from Montgomery |
| | : | County Municipal Court - Western |
| dba BANK SHOTS, et al. | : | Division) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 10th day of October, 2014.

. . . . . . . . . . .

R.C. WIESENMAYER, II, Atty. Reg. #0061184, 15 Willipie Street, Suite 300, Post Office Box 299, Wapakoneta, OH 45895
>	Attorney for Plaintiff-Appellee, Erb Poultry, Inc.

THERESA A. BAKER, Atty. Reg. #0059122, 120 West Second Street, Suite 1700, Dayton, Ohio 45402
>	Attorney for Defendants-Appellants,
>	CEME, LLC, dba BANK SHOTS and Mark Ewart

. . . . . . . . . . . .

FAIN, J.

{¶ 1}	Defendants-appellants CEME, LLC dba Bank Shots, and Mark Ewart appeal

from a summary judgment rendered against them by the Montgomery County Municipal Court–Western Division. Ewart contends that the trial court erred by finding him personally liable for the judgment against the corporation. Ewart and CEME both contend that the evidence does not support the judgment against them and that the trial court erred by failing to consider their response to the motion for summary judgment prior to ruling thereon.

{¶ 2} We conclude that the evidence presented in support of summary judgment was insufficient to pierce the corporate veil, to hold Ewart personally liable. We further conclude that plaintiff-appellee Erb Poultry, Inc., met its Civ.R. 56 burden to establish that CEME is liable for its damages. Finally, we find that the trial court did not abuse its discretion by striking, as untimely, the response filed by Ewart and CEME. Accordingly, that part of the judgment of the trial court awarding damages against Ewart, personally, is Reversed, the judgment is Affirmed in all other respects, and this cause is Remanded for further proceedings as to Erb Poultry's cause of action against Ewart, personally.

### I. Erb Poultry Sells Chicken to Bank Shots, a Restaurant

{¶ 3} Erb Poultry, a distributor of fresh poultry products, is an Ohio corporation located in Lima. CEME, LLC dba Bank Shots is a restaurant located in Trotwood, Ohio. Bank Shots became a customer of Erb in 2012. In 2013, a dispute arose regarding orders placed by CEME for chicken wings and chicken "dippers." Specifically, on January 25, 2013, Erb delivered to Bank Shots wings and dippers, and received a check in payment therefor. Again, on January 28, a delivery was made and CEME again issued a check in payment. CEME thereafter placed a stop-payment order on both checks, alleging that the products delivered were, upon inspection,

beyond their freshness date, mangled, spoiled, and not the sizes ordered.

## II. Course of the Proceedings

**{¶ 4}** Erb brought this action against CEME and Ewart, alleging that they placed orders for "wings and dippers" on January 25 and 27, 2013. Erb further alleged that the defendants issued checks in payment for the products, but that they acted intentionally, and with the purpose to deprive Erb of its product without paying for that product, by placing stop-payment orders on those checks.[1] Erb asked for $3,072.30 in damages, interest, attorney fees and costs.

**{¶ 5}** In its answer, CEME admitted that it had placed the orders, issued checks in payment, and then stopped payment on those checks. CEME alleged that it did so because products delivered to it by Erb were "not the quantity ordered or the specific product ordered by [CEME], were spoiled, mangled and beyond the product's freshness date." Dkt. 3. In its counterclaim, CEME alleged that Erb's actions caused CEME to lose profits. CEME sought $9,959.50 in compensatory damages, and attorney fees.

**{¶ 6}** Ewart moved to dismiss the complaint against him, contending that Erb had failed to allege facts sufficient to pierce the corporate veil and hold him personally liable. Alternatively, he requested summary judgment on the issue of whether he could be held personally liable. In support of both motions, he argued that the Bank Shots restaurant is owned and operated by the limited liability company CEME, and that he is the sole member and

---

[1] The record contains copies of the checks at issue. The checks are drawn on an account entitled "CEME LLC DBA BANK SHOTS WORKING ACCOUNT." Dkt. 6, Ex. C.

manager of that company. Ewart further attached to the motion his own affidavit, in which he averred that he acted only in his capacity as the manager of the limited liability company.

{¶ 7} Erb filed an amended complaint, in which it alleged that it had delivered poultry products to Bank Shots and received, upon delivery of the products, checks in payment therefor. Erb further alleged that Ewart then issued stop-payment orders on two checks. Erb's first claim for relief again alleged that Ewart's actions were intentional, and were done with the purpose to deprive Erb of its product without making payment therefor. The second claim for relief alleged that Ewart had committed the criminal act of Passing Bad Checks, in violation of R.C. 2913.11. Erb requested $3,072.30 in compensatory damages, liquidated damages of $9,216.90, attorney fees, interest and costs.

{¶ 8} Later, Erb answered CEME's counterclaim. Erb admitted that the chicken wings delivered to Bank Shots on a date prior to the dates in question were not the correct size, but denied that any of its delivered products were spoiled, mangled, or outside of their freshness date. Erb also alleged that the company attempted to replace the improperly sized products, but was informed by CEME that the wings had already been sold to customers.

{¶ 9} In its memorandum in opposition to Ewart's motion to dismiss and motion for summary judgment, Erb argued that a genuine issue of fact existed whether the corporation is separate from Ewart, since Ewart's affidavit attached to his motion for summary judgment indicated that he is the sole owner and manager of the corporation. Erb argued that Ewart was the only one responsible for placing stop-payment orders on the checks issued by CEME to Erb. Erb also argued that a question of fact existed as to whether Ewart intended to defraud Erb when he issued the stop-payment orders. Thus, Erb claimed that it had established the existence of a

genuine issue of material fact with regard to whether Ewart could be held liable personally.

{¶ 10} In its answer to Erb's amended complaint, CEME again alleged that the product it received from Erb was not as ordered.

{¶ 11} Discovery was conducted. Erb served interrogatories, requests for production of documents and requests for admissions upon Ewart. According to the record, Ewart filed responses to the interrogatories and request for admissions, but failed to produce requested documents.

{¶ 12} Erb moved for summary judgment on December 5, 2013. The motion stated that Erb was not pursuing the Passing Bad Checks portion of its complaint. In the motion, Erb argued that the product delivered to CEME was delivered within its freshness date and that it was properly refrigerated from the time it was received by Erb until it was delivered to CEME. Affidavits in support of these assertions were attached. Erb also noted that it had attempted to obtain compliance with its request for production of documents, and that it attempted to schedule the depositions of Ewart and two other individuals, but was unable to do so. Erb argued that Ewart should be held personally liable for damages, and that it was entitled to damages.

{¶ 13} The motion for summary judgment was granted on January 7, 2014.[2] CEME and Ewart filed a response to Erb's motion for summary judgment on January 10, 2014. The trial court ordered the response stricken. On January 13, 2014, a judgment entry, prepared by Erb's attorney, was filed. Erb was awarded judgment in the amount of $3072.30, plus interest and costs. No findings of fact were included in the judgment. On January 13, 2014, CEME and

---

[2] The trial court made a hand-written notation on the first page of Erb's motion for summary judgment that stated "Granted. Plaintiff's atty. To present entry. [Judge's signature] copy to all parties."

Ewart filed a motion for reconsideration, which was denied.

**{¶ 14}**    CEME and Ewart appeal.

### III.   The Trial Court Erred by Rendering Summary Judgment Against Ewart

**{¶ 15}**    The first and second assignments of error state as follows:

THE TRIAL COURT ERRED IN GRANTING ERB'S MOTION FOR

SUMMARY JUDGMENT AGAINST EWART.

THE TRIAL COURT ERRED IN FAILING TO RULE ON EWART'S

MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT.

**{¶ 16}**    In these assignments of error, Ewart challenges the trial court's conclusion that Erb was entitled to pierce the corporate veil in order to recover directly from Ewart.

**{¶ 17}**    A corporation is a separate legal entity from its shareholders even where there is only one shareholder in the corporation. *Zimmerman v. Eagle Mtge. Corp*., 110 Ohio App.3d 762, 771, 675 N.E.2d 480 (2d Dist.1996). Therefore, shareholders, officers, and directors will generally not be held personally liable for the acts of a corporation. *Charvat v. Farmers Ins. Columbus, Inc.*, 178 Ohio App.3d 118,  2008-Ohio-4353, 897 N.E.2d 167, ¶ 21 (10th Dist.). However, in certain circumstances, the corporate form may be disregarded and the corporate veil may be pierced.  *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc*., 67 Ohio St.3d 274, 287, 617 N.E.2d 1075 (1993).   In order to reach the personal assets of the corporation's individual shareholders, the creditor must show that "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was

exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Id.* at 289. The burden of proving these elements rested with Erb. *Zimmerman* at 772.

{¶ 18} Turning to the facts of this case, we first conclude that the trial court implicitly overruled Ewart's motion for summary judgment when it rendered summary judgment in favor of Erb. Therefore, to the extent that it has any independent significance, the Second Assignment of Error is overruled. Furthermore, as noted above, the trial court did not make any findings of fact, thus we presume that the trial court found each of the factors set forth in *Belvedere* was met when it rendered summary judgment in favor of Erb. Therefore, we must determine whether the trial court correctly found that Erb had demonstrated no genuine issue of material fact on the issue of Ewart's personal liability.

{¶ 19} In order to meet the first prong of the *Belevdere* test, Erb must demonstrate that Ewart and CEME are "fundamentally indistinguishable." *Belevedere* at 288. Erb's only attempt to establish that the corporate veil should be pierced in this case involved its assertion that Ewart, as the sole member of the corporation, intended to deprive Erb of monies owed it when he stopped payment on the two checks. In other words, Erb's argument is premised upon the argument that because CEME has only one shareholder, that shareholder is indistinguishable from the corporation. This ignores the basic tenet that "[a] corporation is a separate legal entity from its shareholder even when there is only one shareholder in the corporation." *Zimmerman* at 771. Sole control of a corporation, by itself, is insufficient to establish the first *Belevedere* factor. "To find that such a scheme creates an automatic right to pierce the corporate veil would

virtually undo all small businesses functioning as LLCs or Sub-Chapter S. Corporations. The true issue is not dominion and control, but whether [the shareholder] was the 'alter ego' of [the corporation]." *Springfield v. Palco Investment Co., Inc.*, 2013-Ohio-2348, 992 N.E.2d 1194, ¶ 83 (2d Dist.), quoting *State ex rel. Cordray v. U.S. Technology Corp.*, 5th Dist. Tuscarawas No. 11AP60025, 2012-Ohio-855, ¶ 26.

**{¶ 20}** We find nothing in this record, other than Erb's argument that Ewart is the sole member of the corporation, to meet the first *Belvedere* prong. Thus, we conclude that the trial court erred in rendering summary judgment against Ewart.

**{¶ 21}** . Even if there were enough evidence on this record to conclude that Erb had established the first prong of *Belvedere*, we find no evidence to support the second prong. The Supreme Court of Ohio has held that the second prong of the *Belvedere* test refers specifically to fraud or an illegal act, and does not refer to merely unjust or inequitable acts that do not rise to the level of fraud or illegality. *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 1-2.

**{¶ 22}** In this case, the trial court implicitly found that the act of stopping payment on two checks was done with the intent to commit fraud or was an illegal act, as required by the second prong of *Belvedere*. However, Erb did not plead fraud in its complaint, and it decided not to pursue its claim that Ewart committed an illegal act. This case involves a contractual dispute between two parties; there is no pleading of fraud; no evidence, let alone sufficient evidence, to demonstrate fraud; and there is no surviving claim of an illegal act. Thus, we conclude that the trial court erred in finding that Erb satisfied the second prong of *Belvedere*.

{¶ 23} "A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999); Civ.R. 56(C).

{¶ 24} We conclude that Erb failed to demonstrate that there is no genuine issue of material fact on the issue of Ewart's personal liability. The trial court erred in rendering summary judgment against Ewart.

{¶ 25} The First Assignment of Error is sustained.

**IV. The Trial Court Did Not Abuse its Discretion by Ignoring the**

**Defendants' Untimely Responses to Erb's Motion for Summary Judgment;**

**the Trial Court Implicitly Resolved CEME's Counterclaim; and the**

**Trial Court Did Not Err in Rendering Summary Judgment Against CEME**

{¶ 26} The third, fourth, and fifth assignments of error asserted by CEME and Ewart state:

THE TRIAL COURT ERRED IN STRIKING DEFENDANTS'

RESPONSE TO ERB'S MOTION FOR SUMMARY JUDGMENT AND

DENYING DEFENDANTS' MOTION FOR RECONSIDERATION.

THE TRIAL COURT ERRED IN VACATING THE TRIAL DATE

SINCE CEME'S COUNTERCLAIM AGAINST ERB HAD NOT BEEN

HEARD.

THE TRIAL COURT ERRED IN GRANTING ERB'S MOTION FOR

SUMMARY JUDGMENT AGAINST CEME.

{¶ 27}   Ewart and CEME contend that the trial court erred by 1) failing to consider their response to Erb's motion for summary judgment; 2) rendering summary judgment in favor of Erb; 3) failing to hold a trial on their counterclaim; and 4) denying their motion for reconsideration of that judgment.

{¶ 28}   The trial court did not consider the response to Erb's motion for summary judgment. The trial court's reason for not doing so was that the response was untimely.   Pursuant to a pre-trial order dated August 16, 2013, all dispositive motions were due thirty days prior to trial.  Pursuant to an order filed October 21, 2013, trial was scheduled for January 24, 2014 . Erb's motion for summary judgment was filed on December 5, 2013 and was granted on January 7, 2014.  The response to the motion for summary judgment was not filed until January 10, 2014, more than thirty days after the motion was filed and less than 30 days prior to trial.

{¶ 29}   Although a trial court has the authority to accept an untimely filing, CEME and Ewart have not demonstrated that the trial court abused its discretion by failing to do so in this case.  The term "abuse of discretion" connotes a decision that is arbitrary, unreasonable or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). CEME and Ewart gave no reason for failing to respond to Erb's motion thirty days prior to trial, or at least within thirty days after the filing of the motion. The trial court did not rule on the motion for summary judgment until more than 30 days after its filing.  We find no abuse of discretion in its decision not to consider the untimely response to the motion.

{¶ 30}   We next turn to the claim that the trial court erred by rendering summary judgment in favor of Erb with regard to its claim against CEME.  Erb supported its motion for

summary judgment with evidence that Erb is merely a distributor of poultry products, and that it does not kill, package, or prepare any of the products it distributes. Erb also established that its contract with CEME provided that payment was to be collected on delivery, without the right to inspect prior to payment. Furthermore, the affidavits attached to the motion for summary judgment demonstrate that the products delivered to CEME were within their freshness date, and that they were properly refrigerated and handled by Erb. Erb received payment for the products; however, on January 30 and 31, CEME placed stop-payment orders on the two checks. Erb demonstrated that when Lewis Erb attempted to contact CEME on February 4 regarding the checks, he was given Ewart's cellular telephone number. Erb later spoke to Ewart, who told him that the products delivered were spoiled and outside their freshness date. Ewart then used profanity and ended the telephone conversation without resolution. Neither CEME nor Ewart attempted to make arrangements to return the rejected product, nor did they give Erb any evidence to support their claim that the products were not fresh or that they were mangled, spoiled or the wrong size.

{¶ 31} As noted by Erb in its motion for summary judgment, the transaction between the parties is a commercial transaction subject to R.C. Chapter 1302. R.C. 1302.60, which governs buyers' rights on improper delivery, provides:

> Subject to the provisions of section 1302.70 of the Revised Code, and unless otherwise agreed under sections 1302.92 and 1302.93 of the Revised Code, if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may:
>
> (A) reject the whole; or

(B) accept the whole; or

(C) accept any commercial unit or units and reject the rest.

{¶ 32}    R.C. 1302.61, which governs the rejection of goods, provides:

(A) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(B) Subject to the provisions of section 1302.62 of the Revised Code:

(1) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

(2) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of division (C) of section 1302.85 of the Revised Code, he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

(3) the buyer has no further obligations with regard to goods rightfully rejected.

{¶ 33}    The affidavits provided by Erb indicate that the products delivered to CEME were as ordered, within their freshness date and properly handled.  CEME did not offer evidence to contradict this.  Erb also presented evidence that CEME did not notify Erb of the rejection of the goods; instead, placing a stop-payment on the checks tendered in payment.  The evidence establishes that when Erb attempted to contact CEME and Ewart, Ewart stated that the products were spoiled and beyond their freshness date, but made no attempt to resolve the dispute or to return the rejected products to Erb.  While a question of fact may exist regarding whether the

cancelled checks were sufficient to provide notice of rejection, an issue we do not decide herein, there is no evidence to refute the claim that CEME did not comply with its duty to hold the product and permit Erb to reclaim them. A buyer cannot retain the benefit of the contract and receive a full refund of the consideration he paid (or in this case stop payment). *Trajcevski v. Bell*, 115 Ohio App.3d 289, 291, 685 N.E.2d 289 (9th Dist.1996). Based upon this evidence, we conclude that the trial court did not err in rendering summary judgment in favor of Erb.

{¶ 34} We further conclude that the trial court's decision to render summary judgment in favor of Erb implicitly resolves the counterclaim, because the judgment was implicitly premised upon a conclusion that even if the goods were non-conforming, CEME failed to permit Erb to retrieve the product. Thus, the judgment rendered by the trial court was directed to all pending claims and was a final, appealable order.

{¶ 35} Finally, we conclude that the trial court did not err in denying the motion for reconsideration filed by CEME and Ewart, because the Ohio Rules of Civil Procedure do not provide for a motion for reconsideration of a final order. *Tucker v. Pope*, 2d Dist. Miami No.2009 CA 30, 2010-Ohio-995, ¶ 25.

{¶ 36} The third, fourth and fifth assignments of error are overruled.

## V. Conclusion

{¶ 37} The First Assignment of Error having being sustained, and all other assignments of error having been overruled, the judgment against Ewart, personally, is Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for further proceedings with respect to Erb's claim against Ewart.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

R. C. Wiesenmayer, II
Theresa A. Baker
Hon. James L. Manning