[Cite as *LexisNexis v. Moreau-Davila*, 2017-Ohio-6998.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

LEXISNEXIS, A DIVISION OF RELX, : 
INC. :
  :
  :      Appellate Case No. 27319
*Plaintiff-Appellee* :
  :      Trial Court Case No. 2016-CV-2185
v. :
  :      (Civil Appeal from
RACHEL MOREAU-DAVILA, dba :      Common Pleas Court)
MOREAU-DAVILA & GUENTHER :
  :
*Defendant-Appellant*

        . . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of July, 2017.

        . . . . . . . . . . .

ANDREW C. STORAR, Atty. Reg. No. 0018802, MICHAEL W. SANDNER, Atty. Reg. No. 0064107, MICHELLE T. SUNDGAARD, Atty. Reg. No. 0096006, 2700 Kettering Tower, Dayton, Ohio 45423
     Attorneys for Plaintiff-Appellee

RACHEL MOREAU-DAVILA, 5710 West Interstate 10, San Antonio, Texas 78201
     Defendant-Appellant-Pro Se

        . . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Rachel Moreau-Davila, dba Moreau-Davila & Guenther ("Moreau-Davila"), appeals from the decision of the Montgomery County Court of Common Pleas overruling her motion to dismiss the complaint of plaintiff-appellee, LexisNexis, a Division of RELX, Inc. ("LexisNexis"), for lack of personal jurisdiction. Moreau-Davila also appeals from the trial court's decision granting summary judgment in favor of LexisNexis. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On April 27, 2016, LexisNexis, a corporation with a principal place of business in Montgomery County, Ohio, filed a breach of contract action against Rachel Moreau-Davila, an attorney from San Antonio, Texas, who at all relevant times operated as a law office named Moreau-Davila & Guenther. The contract at issue is a Subscription Agreement entered into by the parties on January 29, 2015, whereby Moreau-Davila agreed to pay LexisNexis for its online research services.

{¶ 3} In its complaint, LexisNexis alleged that although it substantially performed its obligations under the Subscription Agreement, Moreau-Davila breached her obligations by failing to make payments as provided in the agreement. As a result of the breach, LexisNexis alleged that Moreau-Davila owed $10,571.28 in unpaid monthly installment payments plus interest and resulting attorney fees.

{¶ 4} Moreau-Davila initially responded to the complaint by filing a Civ.R. 12(B)(2) motion to dismiss on grounds that the trial court lacked personal jurisdiction over her.

The trial court, however, overruled the motion, finding it could exercise personal jurisdiction under Ohio's long-arm statute since the breach of contract claim arose out of a business transaction that took place in Ohio. The trial court also found that Moreau-Davila purposefully established minimum contacts in Ohio by entering into a contract with an Ohio business. The trial court further found that it was permitted to exercise personal jurisdiction pursuant to a forum selection clause in the Subscription Agreement, which provided the following:

> Claims and controversies involving the following will not be subject to arbitration and the parties agree to exclusive jurisdiction in federal or state courts located in Montgomery County, Ohio: * * * (c) non-payment.

{¶ 5} After the trial court overruled Moreau-Davila's motion to dismiss, on July 22, 2016, LexisNexis filed a motion for summary judgment that included various evidentiary materials and affidavits supporting its breach of contract claim and its request for damages. Following the submission of LexisNexis's motion, the trial court issued a briefing order that advised Moreau-Davila her opposing memorandum was due on August 22, 2016.

{¶ 6} Prior to that deadline, on August 19, 2016, Moreau-Davila filed a motion for an extension of time to respond to LexisNexis' motion for summary judgment on grounds that she had been preparing for three criminal jury trials. The trial court granted Moreau-Davila's request, and extended the filing deadline to September 12, 2016.

{¶ 7} Approximately one week after that deadline had passed, on September 21, 2016, Moreau-Davila filed multiple notices advising the court that she had issued discovery requests, interrogatories, and requests for admissions to LexisNexis. The

following day, Moreau-Davila filed her memorandum opposing LexisNexis' motion for summary judgment. Moreau-Davila's memorandum included no supporting evidentiary materials and generally alleged that summary judgment was improper because a genuine issue of material fact existed as to her alleged indebtedness. Specifically, Moreau-Davila claimed that she was not responsible for the alleged debt because a representative of LexisNexis had advised her that she could cancel the Subscription Agreement upon the dissolution of her law firm.

{¶ 8} After considering the submitted evidence, the trial court granted summary judgment in favor of LexisNexis and ordered Moreau-Davila to pay LexisNexis $10,571.28 in unpaid installment payments, plus 15% interest, and $2,227 in attorney fees. Moreau-Davila now appeals from that decision and from the trial court's decision denying her motion to dismiss for lack of personal jurisdiction, raising two assignments of error for review.

## First Assignment of Error

{¶ 9} Moreau-Davila's First Assignment of Error is as follows:

THE COURT BELOW ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR LACK OF PERSONAL JURISDICTION.

{¶ 10} Under her First Assignment of Error, Moreau-Davila contends that the trial court erred in overruling her Civ.R. 12(B)(2) motion to dismiss LexisNexis's breach of contract action for want of personal jurisdiction. In support of her argument, Moreau-Davila claims that the trial court lacked personal jurisdiction under Ohio's long-arm statute because she did not transact business in Ohio as contemplated by the statute. Moreau-

Davila also claims that she did not have sufficient minimum contacts with Ohio for the trial court to exercise personal jurisdiction within the bounds of due process.

{¶ 11} As a preliminary matter, we note that "[p]ersonal jurisdiction is a question of law that we review de novo." (Citation omitted.) *Enquip Technologies Group, Inc. v. Tycon Technoglass, S.r.l.*, 2d Dist. Greene No. 2010-CA-23, 2010-Ohio-6100, ¶ 10. "De novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.' " *Jackson v. Internatl. Fiber*, 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 17 (2d Dist.), quoting *State ex rel. AFSCME v. Taft*, 156 Ohio App.3d 37, 2004-Ohio-493, 804 N.E.2d 88, ¶ 27 (3d Dist.).

{¶ 12} " 'It is rudimentary that in order for a court to enter a valid, personal judgment, the court must have personal jurisdiction over the defendant.' " *Reed Elsevier, Inc. v. Feder*, 2015-Ohio-5013, 50 N.E.3d 1067, ¶ 8 (2d Dist.), quoting *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). " 'Determining whether an Ohio trial court has personal jurisdiction over a nonresident defendant involves a two-step analysis: (1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution.' " *Enquip Technologies Group* at ¶ 10, quoting *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 28.

{¶ 13} Under Ohio's long-arm statute, R.C. 2307.382(A), an Ohio court is permitted to exercise personal jurisdiction over a nonresident defendant for causes of action "arising from" certain enumerated circumstances, including the defendant "[t]ransacting any

business in this state[.]"   R.C. 2307.382(A)(1).   The applicable rule of civil procedure, Civ.R. 4.3(A)(1), mirrors the long-arm statute, as it allows for service of process upon such a nonresident defendant.   *Kauffman Racing Equip.* at ¶ 35-36; Civ.R. 4.3(A)(1).

{¶ 14} "[T]he exercise of personal jurisdiction over a nonresident defendant comports with due process if the foreign defendant has 'minimum contacts' with the forum state such that to require the defendant to defend its interests in the forum state 'does not offend traditional notions of fair play and substantial justice.' "   *EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.R.L.*, 2d Dist. Greene Nos. 2009 CA 42, 2009 CA 47, 2010-Ohio-28, ¶ 73, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).   (Other citations omitted.)

{¶ 15} Nevertheless, " 'the requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system.' "   *Reed Elsevier*, 2015-Ohio-5013, 50 N.E.3d 1067 at ¶ 10, quoting *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.,* 66 Ohio St.3d 173, 175, 610 N.E.2d 987 (1993), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

{¶ 16} One way litigants may consent to personal jurisdiction of a particular court system is through a valid forum selection clause.   *Burger King* at fn. 14; *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741, ¶ 6.   More specifically, "[a]n exclusive forum-selection clause means that the identified court is the *only* court with jurisdiction—the parties *must* commence any action in the identified court."   (Emphasis sic.)   *EnQuip Technologies Group v. Tycon*

*Technoglass,* 2012-Ohio-6181, 986 N.E.2d 469, ¶ 14 (2d Dist.); *Accord Dayton Outpatient Ctr., Inc. v. OMRI of Pensacola, Inc.*, 2014-Ohio-4105, 19 N.E.3d 608, ¶ 14 (2d Dist.).

{¶ 17} The Supreme Court of Ohio has employed the following three-part inquiry for determining the validity of a forum-selection clause: "(1) Are both parties to the contract commercial entities? (2) Is there evidence of fraud or overreaching? (3) Would enforcement of the clause be unreasonable and unjust?" *Preferred Capital* at ¶ 7, citing *Kennecorp* at syllabus. Therefore, " '[a]bsent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust.' " *Reed Elsevier* at ¶ 10, quoting *Kennecorp* at syllabus.

{¶ 18} We note that a forum selection clause is commercial in nature even if the parties are sole proprietorships or small businesses similar to Moreau-Davila's law office. *See Preferred Capital* at ¶ 8. In other words, so long as "both parties are for-profit, commercial entities, the relative size or sophistication of the parties is not a material factor." *Id.*

{¶ 19} In arguing that the trial court erred in exercising personal jurisdiction over her, Moreau-Davila fails to account for the fact that the Subscription Agreement she entered into with LexisNexis contained the following exclusive forum selection clause:

> Claims and controversies involving the following will not be subject to arbitration and *the parties agree to exclusive jurisdiction in federal or state courts located in Montgomery County, Ohio: * * * (c) non-payment.*

(Emphasis added.) "Plaintiff's Exhibit A" attached to Affidavit of Robert J. Berry (July 22,

2016), Montgomery County Court of Common Pleas Case No. 2016-CV-02185, Docket No. 20.

{¶ 20} We reviewed the exact same forum selection clause language in *Reed Elsevier*, 2015-Ohio-5013, 50 N.E.3d 1067, which involved a similar online subscription agreement between LexisNexis and an attorney "doing business as" the law office for which the subscription was entered into. We held that the contract was entered into by two commercial entities and that pursuant to the forum selection clause language, personal jurisdiction was waived for claims of non-payment, and that the trial court in Montgomery County had personal jurisdiction over any such claims. *Id.* at ¶ 11-14.

{¶ 21} Furthermore, after a thorough review of the record, we find no evidence of fraud or overreaching on the part of LexisNexis, and Moreau-Davila makes no such claim with regards to the Subscription Agreement at issue. The record indicates that the agreement was freely negotiated and entered into between the parties and that the forum selection clause was clearly and legibly printed on the contract.

{¶ 22} Moreau-Davila also makes no argument that the forum selection clause is unfair or unreasonable, as she does not even address the forum selection clause in her appeal. We find that the forum selection clause is reasonable and fair given that LexisNexis is located in Montgomery, County Ohio, and because the contract gave Moreau-Davila adequate notice that litigation for non-payment would occur there. "[P]arties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed." (Citations omitted.) *Preferred Capital*, 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741 at ¶ 10. Accordingly, it is not unfair or unjust to uphold the forum selection terms that Moreau-

Davila agreed to.

{¶ 23} For the foregoing reasons we find the forum selection clause at issue is valid. Therefore, Moreau-Davila waived the requirement for the trial court to have personal jurisdiction, as she consented to its jurisdiction via the forum selection clause. In turn, we need not address whether Moreau-Davila "transacted business" per Ohio's long-arm statute or whether her actions constituted "minimum contacts" with Ohio. Accordingly, we reject those arguments under Moreau-Davila's First Assignment of Error and find that she must live up to her end of the bargain in which she consented to personal jurisdiction in the courts of Montgomery County, Ohio. *See Kennecorp,* 66 Ohio St.3d at 175-176, 610 N.E.2d 987.

{¶ 24} Moreau-Davila's First Assignment of Error is overruled.

**Second Assignment of Error**

{¶ 25} Moreau-Davila's Second Assignment of Error is as follows:

THE COURT BELOW ABUSED ITS DISCRETION AND/OR COMMITTED SUBSTANTIAL ERROR WHEN THERE IS GENUINE ISSUE AS TO MATERIAL FACT THAT REMAINS TO BE LITIGATED AND WHEN IT DELIBERATELY DISREGARDED DEFENDANT-APPELLANT'S PENDING DISCOVERY WHEN GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

{¶ 26} Under her Second Assignment of Error, Moreau-Davila claims that the trial court erred in granting summary judgment in favor of LexisNexis. In support of her claim, Moreau-Davila contends that a genuine issue of material fact exists regarding her alleged

indebtedness to LexisNexis and the validity of the Subscription Agreement's acceleration clause. Moreau-Davila also claims that it was error for the trial court to enter summary judgment before LexisNexis responded to her discovery requests, as she claims ongoing discovery precludes the entry of summary judgment. Moreau-Davila further claims that her law firm was not properly joined as a necessary party to the action.

*1. Summary Judgment Standard of Review*

{¶ 27} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶ 28} The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 29} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Id.* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be

construed in favor of the nonmoving party.  *Id.*

{¶ 30} We review the trial court's ruling on a motion for summary judgment de novo.   (Citation omitted.)   *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42.   As noted earlier, de novo review means that we examine the evidence without deference to the trial court's decision, and use the same standard that the trial court should have used to determine whether, as a matter of law, no genuine issues exist for trial.   (Citations omitted.)   *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### 2.  No Genuine Issue of Material Fact Exists For Trial

{¶ 31} As previously discussed, Moreau-Davila claims that the trial court erred in granting summary judgment in favor of LexisNexis on its breach of contract action.   To establish breach of contract, LexisNexis had the burden of proving: (1) the existence of a contract between the parties; (2) performance by LexisNexis; (3) breach by Moreau-Davila; and (4) damage or loss to LexisNexis.   *Discover Bank v. Swartz*, 2016-Ohio-2751, 51 N.E.3d 694, ¶ 15 (2d Dist.), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994).

{¶ 32} Moreau-Davila does not dispute that she entered into the Subscription Agreement at issue, but claims summary judgment in favor of LexisNexis on its breach of contract claim was improper because a genuine issue of material fact existed as to her alleged indebtedness to LexisNexis and to the validity of the Subscription Agreement's acceleration clause.   We disagree.

{¶ 33} In support of its motion for summary judgment, LexisNexis submitted the

following documentation: (1) a copy of the Subscription Agreement and addendums signed by Moreau-Davila on January 29, 2015; (2) the Terms and Conditions of Use and Price Schedule for LexisNexis's services that were incorporated by reference in the Subscription Agreement; and (3) LexisNexis's Account Statement and Invoice Summary for Moreau-Davila showing an outstanding balance of $389.63 for unpaid monthly installment payments and $10,181.65 for accelerated monthly installment payments.

{¶ 34} In addition, LexisNexis submitted an affidavit signed by its U.S. Collections Manager, Robert Berry.   In the affidavit, Berry averred to the authenticity of the documentation provided in support of LexisNexis's motion for summary judgment and to the total amount of Moreau-Davila's debt to LexisNexis, $10,571.28.   LexisNexis also submitted an affidavit signed by its attorney, averring that the company had incurred attorney fees and court costs in the amount of $2,227 for this matter.

{¶ 35} In reviewing the Subscription Agreement provided by LexisNexis, we find that paragraphs LA 3.3 and LPA 3.1 of the agreement clearly and unambiguously indicate that LexisNexis would provide Moreau-Davila with an initial complementary period of online research services until March 27, 2015.   On that date, Moreau-Davila was then required to make increasing monthly installment payments to LexisNexis until January 28, 2018.

{¶ 36} Paragraph 7.6 of the Subscription Agreement contains an acceleration clause providing that: "if any charge not the subject of legitimate dispute should remain unpaid for more than 75 days after becoming due, then [LexisNexis] reserves the right to require each remaining unpaid Monthly Installment for the Committed Term to become immediately due and payable to [LexisNexis]."

{¶ 37} The Account Statement provided by LexisNexis indicates that Moreau-Davila stopped making the agreed-upon monthly installment payments on May 31, 2015, and that as of February 9, 2016, she owed $389.63 for the missed payments.

{¶ 38} The Invoice Summary provided by LexisNexis indicates that Moreau-Davila's remaining minimum monthly installment payments owed between July 1, 2015 and January 27, 2018, were accelerated on February 2, 2016, pursuant to the terms of the Subscription Agreement. The accelerated amount in the Invoice Summary is $10,181.65, making Moreau-Davila's total debt $10,571.28.

{¶ 39} Section III of LexisNexis' Price Schedule indicates that amounts which have not been paid within 30 days after the invoice date are "subject to a late payment charge at a rate equal to 15% per annum (or if less, the maximum rate permitted under applicable law)." The Price Schedule also indicates that if Moreau-Davila fails to pay charges when due, she "will be liable for all costs of collection incurred by [LexisNexis], including, without limitation, collection agency fees, reasonable attorney's fees, and court costs." Again, as previously noted, LexisNexis's attorney submitted an affidavit averring that the company had expended $2,227 in attorney fees resulting from Moreau-Davila's nonpayment.

{¶ 40} In response to all the documentation and information submitted by LexisNexis, Moreau-Davila claims summary judgment is inappropriate because a genuine issue of material fact exists regarding her indebtedness, which she claims is overstated and false. In making this argument, Moreau-Davila did not allege or provide any evidentiary materials showing that she had paid LexisNexis or that LexisNexis had failed to perform its obligations under the Subscription Agreement. Instead, Moreau-

Davila maintained that she was not responsible for the alleged debt because, at some undisclosed point in time, she had canceled the Subscription Agreement upon the dissolution of her law office, Moreau-Davila & Guenther.

**{¶ 41}** We note that there is a provision in the addendum of the Subscription Agreement providing that:

Subscriber may terminate this Agreement in the event of its complete dissolution by providing [LexisNexis] written notice of its dissolution including a copy of the Certification of Dissolution filed in its state o[f] incorporation or, for sole proprietors, other evidence reasonably satisfactory to [LexisNexis] and which supports that Subscriber is no longer operating a law practice.

**{¶ 42}** Although this provision permits termination of the Subscription Agreement, Moreau-Davila has failed to state when, or provide any evidence showing that she actually ceased operating as Moreau-Davila & Guenther. Nor did Moreau-Davila provide any evidentiary materials demonstrating that she notified LexisNexis in writing that she had ceased operating her law firm as required by the terms of the Subscription Agreement. Moreau-Davila also did not provide any details or evidence showing when and how she allegedly went about cancelling the Subscription Agreement. Accordingly, there is nothing in the record, not even a sworn affidavit, supporting Moreau-Davila's assertion that she was not responsible for the debt because she had canceled the Subscription Agreement with LexisNexis.

**{¶ 43}** In opposing summary judgment, Moreau-Davila also challenges the validity of the acceleration clause in the Subscription Agreement; yet, she provides no basis for

why the clause should not be enforced. " 'By agreeing to an acceleration clause, the parties in this case have avoided the operation of the general rule that nonpayment on an installment loan does not constitute a breach of the entire contract. In a contract with an acceleration clause, a breach constitutes a breach of the entire contract.' " *U.S. Bank, N.A. v. Gullotta*, 5th Dist. Stark No. 2010CA00181, 2011-Ohio-2235, ¶ 21, quoting *U.S. Bank Natl. Assn. v. Gullotta*, 120 Ohio St.3d 399, 2008-Ohio-6268, 899 N.E.2d 987, ¶ 31.

{¶ 44} A review of the Subscription Agreement establishes that the acceleration clause contained therein unambiguously provides that LexisNexis reserves the right to require all remaining unpaid monthly installment payments for the full term of the contract to become immediately due and payable if any charge remains unpaid for more than 75 days after becoming due. In opposing LexisNexis' motion for summary judgment, Moreau-Davila did not refute or provide any evidence contradicting LexisNexis's Account Statement and Invoice Summary showing that she was in arrears between May 2015 and February 2016, which is well over 75 days. Accordingly, there is no basis on which to find that the acceleration clause does not apply to Moreau-Davila.

{¶ 45} Based on the foregoing, it is clear that in opposing LexisNexis' motion for summary judgment, Moreau-Davila has done nothing more than rest upon the allegations and denials contained in her pleadings. This does not satisfy a non-moving party's reciprocal burden under Civ.R. 56(E). *Dresher*, 75 Ohio St.3d at 292-293, 662 N.E.2d 264. As a further matter, Moreau-Davila's opposing memorandum was also untimely filed; therefore, it was within the trial court's discretion whether to accept and consider the arguments in her memorandum when rendering its decision. *See ERB Poultry, Inc. v. CEME, L.L.C.*, 2014-Ohio-4504, 20 N.E.3d 1228, ¶ 29 (2d Dist.); *Mueller v. Handee Mart*,

8th Dist. Cuyahoga No. 65713, 1994 WL 317644, *3 (June 30, 1994), citing *Powell v. Consolidated Rail Corp.*, 31 Ohio App.3d 219, 510 N.E.2d 818 (12th Dist.1986). Although we cannot determine from the trial court's decision and entry whether it accepted and considered Moreau-Davila's memorandum, we nevertheless find that under the circumstances of this case, disregarding the untimely memorandum would not have been an abuse of its discretion.

{¶ 46} Because Moreau-Davila failed to provide any evidentiary materials refuting LexisNexis's evidence showing that she: (1) entered into the Subscription Agreement at issue; (2) failed to make monthly installment payments as required by the Subscription Agreement; and (3) owed LexisNexis a total of $10,571.28, plus attorney fees and interest as a result of her contractual breach, we find that Moreau-Davila failed her reciprocal burden to demonstrate that a genuine issue of material fact existed with regards to the breach of contract claim that was fully established and supported by LexisNexis's motion for summary judgment and accompanying evidentiary materials.

### 3. Pending Discovery Does Not Preclude Summary Judgment

{¶ 47} Moreau-Davila also argues that because she was awaiting discovery responses from LexisNexis, the trial court erred by prematurely entering a summary judgment ruling in this case. We once again disagree.

{¶ 48} "Pending discovery does not prevent the trial court from granting summary judgment, absent an express request for a specific delay to answer the summary judgment motion." *Matheny v. AT&T Information Systems, Inc.*, 8th Dist. Cuyahoga No. 58018, 1991 WL 12958, *1 (Feb. 7, 1991), citing *Stegawski v. Cleveland Anesthesia*

*Group, Inc.*, 37 Ohio App.3d 78, 86-87, 523 N.E.2d 902 (8th Dist.1987); *Nagy v. Sunny Acres Nursing Home*, 8th Dist. Cuyahoga No. 55267, 1988 WL 113568, *1 (Sept. 29, 1988).

{¶ 49} This court has consistently held that: "Parties who find themselves in a position of having to respond to a motion for summary judgment before adequate discovery has been completed must seek their remedy through Civ. R. 56(F)[.]" *Lillback v. Metro. Life Ins. Co.*, 94 Ohio App.3d 100, 103, 640 N.E.2d 250 (2d Dist.1994). *Accord Cornett v. State Farm Mut. Ins. Co.*, 2d Dist. Montgomery No. 19103, 2002 WL 1483219, *2 (July 12, 2002); *Security Nat. Bank and Trust Co. v. Jones*, 2d Dist. Clark No. 2000-CA-59, 2001 WL 754776, *4 (July 6, 2001); *Clark County Solid Waste Mgt. Dist. v. Danis Clarkco Landfill Co.*, 109 Ohio App.3d 19, 36, 671 N.E.2d 1034 (2d Dist.1996).

{¶ 50} Civ.R. 56(F) provides that:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 51} Under this rule, a party is afforded " 'a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it.' " *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, 958 N.E.2d 194, ¶ 18 (12th Dist.), quoting *Gates Mills Invest. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168-169, 392

N.E.2d 1316 (8th Dist.1978); *Internatl. Brotherhood of Electrical Workers, Loc. Union No. 575 v. Settle-Muter Elec., L.T.D.*, 12th Dist. Fayette No. CA2012-02-003, 2012-Ohio-4524, ¶ 37.

**{¶ 52}** "A motion for a continuance to conduct discovery under Civ.R. 56(F) ' "must be supported by a proper affidavit." ' " *BAC Home Loans* at ¶ 18, quoting *Silver v. Jewish Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314, 943 N.E.2d 577, ¶ 20 (12th Dist.), quoting *St. Joseph's Hosp. v. Hoyt*, 4th Dist. Washington No. 04CA20, 2005-Ohio-480, ¶ 24. "General averments requesting a continuance for the purpose of discovery are insufficient, as ' "the party seeking the Civ.R. 56(F) continuance must state a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance." ' " *Id.*

**{¶ 53}** "A party who fails to seek relief under Civ.R. 56(F) does not preserve his right to challenge the adequacy of discovery upon appeal." *Clark County Solid Waste Mgt. Dist.*, 109 Ohio App.3d at 36, 671 N.E.2d 1034, citing *R & R Plastics, Inc. v. F.E. Myers Co.*, 92 Ohio App.3d 789, 798, 637 N.E.2d 332 (6th Dist.1993) and *Stegawski*, 37 Ohio App.3d 78, 523 N.E.2d 902 at paragraph four of the syllabus; *Cornett,* 2d Dist. Montgomery No. 19103, 2002 WL 1483219 at *2.

**{¶ 54}** In this case, the original filing deadline for Moreau-Davila's memorandum opposing summary judgment was August 22, 2016. Three days before that deadline, Moreau-Davila filed a motion requesting an extension of time to submit her memorandum on grounds that she had been preparing for three criminal jury trials. The trial court granted the motion and changed the filing deadline to September 12, 2016. Thereafter, Moreau-Davila did not issue discovery requests to LexisNexis until September 21, 2016,

nine days after her opposing memorandum was due. Then, without requesting any further extension of time, Moreau-Davila filed her opposing memorandum ten days late on September 22, 2016. Although Moreau-Davila argued in her memorandum that summary judgment was premature because discovery was pending, she never requested another extension of time nor filed a motion and affidavit under Civ.R. 56(F).

{¶ 55} If Moreau-Davila believed that she needed a continuance to develop the evidentiary materials she needed to respond to LexisNexis's motion for summary judgment, she should have applied for a continuance under Civ.R. 56(F). Because Moreau-Davila did not seek relief under Civ.R. 56(F), she cannot not use the lack of discovery responses as a basis for reversing the trial court's summary judgment ruling on appeal. *Clark County Solid Waste Mgt. Dist.* at 36; *Cornett* at *2. This is especially true in this case, as Moreau-Davila did not issue her discovery requests until after the filing deadline for her opposing memorandum had passed. Therefore, she cannot rely on her own delay in issuing discovery requests as a basis for postponing the trial court's summary judgment ruling.

*4. Moreau-Davila's Law Firm is Not a Separate Entity that Needed to be Joined in the Breach of Contract Action*

{¶ 56} In opposing summary judgment, Moreau-Davila further claims that because her law firm, Moreau-Davila & Guenther, was listed as the "subscriber" in the Subscription Agreement, the firm should have been joined as a necessary party to the breach of contract action. However, not only did Moreau-Davila fail to ever move to have her firm joined as a party to the action, but the record indicates that Moreau-Davila admitted that she was simply doing business under the name "Moreau-Davila & Guenther," as she

consistently referred to herself in the pleadings as "Rachel Moreau-Davila d/b/a Moreau-Davila & Guenther."

{¶ 57} As we noted in *Auer v. Paliath*, 2d Dist. Montgomery No. 27004, 2016-Ohio-5353:

" 'The designation "d/b/a" means "doing business as" but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations.' " *Poss v. Morris*, 11th Dist. Ashtabula No. 94-A-0042, 1996 WL 200614, *3 (Mar. 29, 1996), quoting *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1387 (D.Neb.1977).

*Auer* at ¶ 25.

{¶ 58} Accordingly, "[w]hen "d.b.a." (doing business as) is used, there is no legal distinction between the individual and the business entity since it is merely a descriptive of the person who does business under some other name." *Herschell v. Rudolph*, 11th Dist. Lake No. 2001-L-069, 2002 WL 549980, *6 (Apr. 12, 2002), citing *Poss* at 7-8. Therefore, LexisNexis properly brought the breach of contract action against "Rachel Moreau-Davila, d/b/a Moreau-Davila & Guenther," as the law firm is not a distinct entity from Moreau-Davila herself.

{¶ 59} For all the foregoing reasons, Moreau Davila's Second Assignment of Error challenging the trial court's decision granting summary judgment in favor of LexisNexis is overruled.

## Conclusion

**{¶ 60}** Having overruled both assignments of error raised by Moreau-Davila, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Andrew C. Storar
Michael W. Sandner
Michelle T. Sundgaard
Rachel Moreau-Davila
Hon. Dennis J. Adkins