NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0662n.06

Case No. 15-5159

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOHN F. WEARY, JR., | ) | |
| | ) | |
| Creditor-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| STEPHANIE RENEE POTEAT, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Debtor-Appellee. | ) | |
| | ) | M E M O R A N D U M |
| | ) | O P I N I O N |

**FILED**
Sep 30, 2015
DEBORAH S. HUNT, Clerk

BEFORE: MERRITT, McKEAGUE and WHITE, Circuit Judges.

 McKEAGUE, Circuit Judge. This is an appeal from a district court judgment affirming the bankruptcy court's order finding creditor John F. Weary, Jr. in contempt for violating the automatic bankruptcy stay and awarding debtor Stephanie Poteat actual and punitive damages. On appeal, Weary contends the bankruptcy court erred by failing to recognize that his actions came within the criminal prosecution exception to the automatic stay. Weary's arguments are unavailing. We affirm.

I

 Appellant John F. Weary, Jr., was in a landlord-tenant relationship with Stephanie Poteat. She defaulted in her rent payments and moved out of the rental property in Hendersonville, Tennessee in May 2012. In January 2013, Weary sent a letter to Poteat's parents' address raising

the possibility of a criminal prosecution unless Poteat delivered to him a cashier's check for $13,000. Weary filed a civil action against Poteat in Tennessee state court in March 2013, claiming $24,999.99 in damages. A month later, Poteat filed a Chapter 7 bankruptcy petition. After Weary received notice of the bankruptcy filing and the accompanying automatic stay under 11 U.S.C. § 362(a) in May 2013, he sent letters to both Poteat's bankruptcy attorney and Poteat's mother, who had served as a reference when her daughter entered into the lease agreement. The letters, quoted at length in the district court's opinion, acknowledged that Weary could no longer pursue remedies in the civil action, but expressed his intention to pursue criminal charges against Poteat which, the letters insisted, would turn out to be far more costly for her.

In response, Poteat moved the bankruptcy court to hold Weary in contempt for violating the automatic stay. The bankruptcy court conducted a hearing on the motion in December 2013, receiving testimony from Weary, Poteat, and Poteat's mother before issuing its ruling from the bench. The court noted that the automatic stay prohibits creditors from engaging in "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." R. 1-36, Bench Opinion Tr. at 8, Page ID 357 (quoting 11 U.S.C. § 362(a)(6)). The court noted that the stay is designed to give debtors "a breathing spell from collection efforts," *id.* (quoting *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001)), and although it does not prohibit all communications from a creditor to a debtor, a stay violation is made out by actions that are coercive or harassing in nature. *Id.* at 11, Page ID 360. The bankruptcy court found "that there was no purpose to be served by [Weary's] sending the letters . . . other than to threaten, harass and intimidate the Debtor in an effort to coerce her into paying him." *Id.* at 12, Page ID 361. The court further found that Weary acted "willfully," i.e., with knowledge of the bankruptcy stay. *Id.* at 10–11, Page ID 359–60.

In defense of his actions, Weary, through counsel, invoked 11 U.S.C. § 362(b)(1), which excepts from the operation of the automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor." Weary thus argued that his letters, communicating his *intent* to pursue criminal prosecution, came within the exception. The bankruptcy court acknowledged the criminal prosecution exception, but observed that Weary's letters were not in the nature of a criminal prosecution, but communicated a "threat" to pursue prosecution. The court found that "the spirit and motivation behind those letters, irrespective of Mr. Weary's testimony to the contrary, clearly establish that those letters had only one purpose, to harass and coerce the Debtor into paying Mr. Weary's claim." R. 1-36, Bench Opinion Tr. at 13, Page ID 362.

Having found a willful violation of the stay, the bankruptcy court recognized that Poteat was entitled to an award of her actual damages, including costs and attorneys' fees, and that assessment of punitive damages is allowable "in appropriate circumstances." 11 U.S.C. § 362(k)(1). The bankruptcy court considered various factors, including Weary's sophistication, ability to pay, and demeanor, which the court characterized as reflecting open defiance of the stay. Remarking that "[t]his, frankly, is the most egregious automatic stay case that I've heard since I've been on the bench and I've been on the bench a long time," the court imposed punitive damages in the amount of $7500. R. 1-36, Bench Opinion at 15–16, Page ID 364–65.

On appeal to the district court, Weary asserted the same legal arguments that he raises here. Weary did not challenge the bankruptcy court's fact findings or its exercise of discretion in imposing punitive damages. His appeal was limited to claimed legal error: that the bankruptcy court erroneously applied an "expanded interpretation" of the § 362(b)(1) criminal prosecution exception. Weary argued that the bankruptcy court erred by considering the *purpose* for which

Weary intended to pursue criminal charges against Poteat. The district court acknowledged that there is a split of authority on whether a party's motivation for pursuing criminal prosecution is relevant to determining the applicability of the exception. The court correctly concluded, however, that the split of authority was immaterial to the bankruptcy court's ruling. The court explained that the bankruptcy court did not hold Weary outside the protection of the exception because his intention to pursue criminal charges was motivated by desire to collect the debt owed him, but rather because Weary's letters, which were not in furtherance of any criminal prosecution,[1] were a thinly veiled attempt to coerce payment of the debt, violating Poteat's "breathing spell" from collection efforts.

The district court also rejected Weary's argument that punishing him for communicating his intent to pursue criminal charges had an impermissible chilling effect on his First Amendment right to petition for redress of grievances. The court correctly explained that the automatic stay does not restrain Weary's freedom to pursue criminal charges with the local governmental authorities, but it does restrain his freedom, as a creditor, to communicate a threat to the debtor, based on the possibility of criminal prosecution, in order to induce payment:

> In this case, appellant was never prohibited from filing a police report, speaking with prosecutors, or otherwise petitioning the government to commence a criminal action against appellee, and the bankruptcy court's sanctions did not punish him for such conduct. Rather, appellant was punished for engaging in prohibited acts to collect on appellee's debt. Accordingly, appellant's First Amendment right to petition the government for redress of grievances was not violated in this case.

R. 11, Opinion at 12, Page ID 435.

---

[1] In fact, no criminal prosecution was then or ever commenced or continued.

## II

Inasmuch as Weary's claims on appeal present purely questions of law, we review de novo. *In re Global Technovations, Inc.*, 694 F.3d 705, 714–15 (6th Cir. 2012). On de novo review of the bankruptcy court's ruling, as affirmed by the district court, we find no error. Weary has presented no argument on appeal that is not adequately and correctly resolved by the district court rulings.

The rulings may be succinctly summarized as follows. First, the bankruptcy court found that the purpose of Weary's offending letters was to coerce payment of the debt. Weary has not challenged this finding on appeal, only its materiality.

Second, the bankruptcy court found that Weary sent the letters with knowledge of the automatic bankruptcy stay. Weary has not challenged this finding either.

Third, the bankruptcy court held the criminal prosecution exception inapplicable because Weary's letters to Poteat's lawyer and mother were not a "commencement or continuation of a criminal action or proceeding." Weary does not argue otherwise; rather, he contends his letters were expressions of intent to exercise his right to pursue charges that *could* result in commencement of a criminal action. Yet, because the communications indisputably did not advance criminal prosecution and, therefore, do not come within the plain language of the exception; and because the communications were found to be a threat whose purpose was to induce payment, a finding of fact Weary has not directly challenged, they clearly ran afoul of the plain language of the automatic stay, prohibiting "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(6). Hence, the bankruptcy court did not need to reach Weary's main argument, i.e., that the criminal prosecution exception should be applied irrespective of the purpose for the

prosecution. Here, there simply is no act in furtherance of "commencement or continuation of a criminal action or proceeding" whose purpose could be considered. Weary's argument that the bankruptcy court improperly considered the purpose for his letters in holding the criminal prosecution exception inapplicable is mere sophistry.

Fourth, the bankruptcy court found that the circumstances of this case—i.e., the willfulness of the violation and Weary's manifest defiance of the stay—justified award of punitive damages in addition to actual damages. Again, Weary has not challenged these findings.

Fifth, Weary's argument that the bankruptcy court's order impermissibly chills his First Amendment rights was rejected by the district court.[2] Weary cites no authority for the proposition that enforcing the automatic stay by punishing him for "declaring his intention" (i.e., threatening) to pursue charges impermissibly chills his right to petition for redress. Nor has he explained *how* his right to legitimately pursue charges with local prosecutorial authorities was or is in any way hindered by the bankruptcy court's order.

Accordingly, on de novo consideration of Weary's appellate arguments, we find no error in the district court's affirmance of the bankruptcy court's order. An additional opinion reiterating the analysis contained in the lower court rulings would be duplicative and is unnecessary. We therefore **AFFIRM** on the basis of the lower court opinions.

---

[2] That the bankruptcy court did not allude to the argument in its ruling comes as no surprise. The argument was not asserted in Weary's brief and was mentioned by Weary's counsel during the contempt hearing only in one sentence . . . in response to a question from the court. The bankruptcy judge asked counsel why it was "necessary" for Weary to broadcast his intention to pursue criminal charges to Poteat's attorney and mother. Weary's counsel answered, "I can't answer why it would be necessary, but . . . prohibiting such communication . . . would amount to a chilling effect on freedom of speech." R. 1-35, Hearing Tr. at 79, Page ID 343. Although the argument was only perfunctorily asserted and could have been deemed forfeited, *see White Oak Prop. Development, LLC v. Washington Twp., Ohio*, 606 F.3d 842, 850 (6th Cir. 2010), the district court addressed the claim and found it to be without merit.