NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0470n.06

Nos. 19-3987/3990

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 10, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PERCY SQUIRE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| VICKIE STRINGER, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: NORRIS, NALBANDIAN, and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** In a bankruptcy proceeding, the automatic stay of collection activity plays a vital role in preserving the rights of debtors and creditors alike. *See* 11 U.S.C. § 362. For debtors, they gain a concentrated means for organizing their financial affairs. And for creditors, they gain a concentrated means for maximizing collection efforts. Here, the bankruptcy court found that Sterling Williams and his counsel Percy Squire (together, "Creditors") violated the automatic stay by unilaterally moving in state court to collect assets held by the debtor. Because Creditors offer no valid justification for their collection efforts, and because no other reversible error occurred below, we **AFFIRM** the judgment of the bankruptcy court.

**BACKGROUND**

Vickie Stringer authored an urban fiction novel based upon her life experiences in the late 1990s. Simon & Schuster later agreed to publish the novel. As part of the agreement, Simon & Schuster and Stringer agreed on a means for calculating royalty payments owed to Stringer based

upon book sales. Experiencing sales success with her initial novel, Stringer continued to write, and Simon & Schuster continued to publish her writings. Over seventeen years, Stringer authored twelve novels under various pen names, all with Simon & Schuster. During that time, book royalties were Stringer's primary income.

Despite her publishing success, debt was a constant problem for Stringer. At one point, she engaged an accountant, Sterling Williams, to help her navigate an IRS audit. Williams eventually agreed to loan Stringer a considerable sum to settle her tax liability, a sum Stringer was to pay back with interest. When Stringer failed to do so, Williams filed suit against her in Ohio state court. Williams obtained a judgment against Stringer for $71,960.80, with eight percent annual interest, an amount equivalent to roughly $130,000 today. By that time, however, Stringer's collective debt to her creditors (including Williams) had ballooned to nearly $5,000,000.

Lacking the means to pay back her debt, Stringer filed for Chapter 7 bankruptcy protection. In her filing, Stringer disclosed her home, valuable personal property, and other assets. She also identified each of her publishing agreements as well as her entitlement to royalties for the books she wrote under aliases. Stringer correctly recorded that she was owed just over $3,200 in royalties from Simon & Schuster, including for the alias novels. Stringer, however, failed to identify those aliases in the proper place on the bankruptcy schedule.

Following Stringer's filing, the automatic stay was instituted under 11 U.S.C. § 362, and a Trustee was appointed to administer the bankruptcy estate. Stringer notified the Trustee of the royalties owed to her by Simon & Schuster. After concluding that the royalty agreements held little equity and were burdensome to the estate, the Trustee abandoned them to Stringer.

As Stringer's bankruptcy proceeding began to unfold, Williams engaged Percy Squire to represent him in the proceeding. On Williams's behalf, Squire filed in state court an affidavit and

order of garnishment, which sought to garnish the unpaid royalties from the "Simon & Schuster account belonging to Vickie Stringer." Due to that filing, along with subsequent communications from Squire threatening litigation, Simon & Schuster refused to release the royalties to Stringer. Stringer responded by filing in state court an emergency motion to release the garnishment. Upon learning of the pending bankruptcy proceeding, the state court promptly granted the release. The next day, Squire removed the state court garnishment action to the bankruptcy court.

Creditors' collection efforts prompted Stringer to file a motion in the bankruptcy court for Creditors to show cause why they should not be held in contempt for violating the automatic stay. At a hearing on the motion, Squire participated both as a party to the contempt motion and as counsel for his co-party, Williams. During direct examination by Stringer's counsel, Squire testified that he believed he was entitled to seek garnishment in state court because Stringer had not been entirely forthright during the bankruptcy process, most notably by excluding her pen names from her bankruptcy filings. Squire testified that these omissions coupled with Stringer's "hustler" background and two-decade-old criminal convictions gave him license to take action to protect Williams's interests. He also suggested that Stringer's pen names constituted separate entities from Stringer herself, but eventually conceded that was not the case.

Following the direct examination of Squire, the bankruptcy court allowed Squire to "cross-examine himself," affording him the opportunity to testify freely about the events leading up to the show-cause motion. At one point during his self-cross-examination, Squire attempted to introduce evidence of Stringer's decades-old convictions under Federal Rule of Evidence 609. The district court sustained an objection from Stringer's counsel to exclude that evidence as irrelevant.

Finding that Creditors had willfully violated the automatic stay, the bankruptcy court entered judgment in favor of Stringer, awarding her the attorney's fees she incurred in pursuing the contempt motion as well as punitive damages equal to three times that amount—a sum totaling over $100,000. On appeal to the district court, Creditors asserted that the bankruptcy court erred by: (1) finding that Creditors willfully violated the stay; (2) refusing to allow Squire to introduce evidence of Stringer's past convictions; (3) failing to ratify or annul Creditors' violation of the stay; and (4) failing to recuse for judicial bias. The district court declined to reach the latter two arguments on the ground that Creditors did not raise them below. It then rejected Creditors' remaining arguments and affirmed the judgment of the bankruptcy court.

## ANALYSIS

Creditors' appellate arguments are identical to those asserted in the district court, with one addition: That the bankruptcy court should have taken judicial notice of public records showing that Stringer had an interest in certain Ohio corporate entities, which she failed to disclose on her bankruptcy schedules. Creditors' failure to properly preserve their arguments, however, has dramatic ramifications for their success on appeal. Like the district court, we will not consider Creditors' argument regarding recusal, as it was not raised in the bankruptcy court. *Grider Drugs, LLC v. Express Scripts, Inc.*, 500 F. App'x 402, 406–07 (6th Cir. 2012) (citing *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 863 (6th Cir. 1992) (refusing to address an argument for recusal not raised in the bankruptcy court)). Likewise, because Creditors failed to raise their ratification/annulment argument in timely fashion in the bankruptcy court, we review it for plain error only. *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 548 (6th Cir. 2003). Finally, we will not consider Creditors' judicial notice argument, which was not raised below. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010). As to their remaining arguments, we independently

review the bankruptcy court's decision, examining its findings of fact for clear error and its conclusions of law de novo. *In Re Am. HomePatient, Inc.*, 420 F.3d 559, 563 (6th Cir. 2005).

*The Contempt Finding.* The protocol surrounding the Bankruptcy Code's automatic stay is well defined. When a debtor files for bankruptcy, an automatic stay is immediately instituted, preventing nearly all collection activities by creditors. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020) (citing 11 U.S.C. § 362(a)). A creditor who violates the stay may be found in contempt. *In re Nicole Gas Prod., Ltd.*, 916 F.3d 566, 578 (6th Cir. 2019). And in the case of a willful violation, the creditor may be required to pay the harmed parties actual and punitive damages as well as attorney's fees. 11 U.S.C. § 362(k)(1).

Upon finding that Creditors willfully violated the automatic stay in this proceeding, the bankruptcy court entered a monetary judgment against them. Creditors concede that, despite their knowledge of the stay, they undertook collection actions, as broadly defined under 11 U.S.C. § 362(a). They initially justified those efforts by arguing that a person's trade name is separate from that person for purposes of collections. This meant, to their mind, that pursuing the royalties due from the books Stringer published under aliases did not violate the stay prohibiting collection efforts against Stringer herself. But Squire later conceded this argument is wrong. And on that point of Ohio law, he is correct. *In re Nicole Gas*, 916 F.3d at 573 (applying Ohio corporate law to resolve whether a party violated the automatic stay). "Doing business under another name does not create an entity distinct from the person operating the business." *LexisNexis v. Moreau-Davila*, 95 N.E.3d 674, 686 (Ohio Ct. App. 2017).

That leaves Creditors' argument that the alias royalties were not entitled to the protection of the bankruptcy stay even as Stringer's own assets. That is so, Creditors say, because Stringer did not disclose her aliases in her bankruptcy filing. As a general matter, Creditors are correct that

the bankruptcy process is designed for the "honest but unfortunate debtor." *See, e.g.*, *Grogan v. Garner*, 498 U.S. 279, 287 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). But that venerable principle did not serve as a gateway for Creditors to circumvent the automatic stay based upon their individual determination that Stringer had been dishonest in some aspect of the bankruptcy process. The Bankruptcy Code, in fact, provides a specific mechanism for Creditors to request relief from a § 362 stay. Under 11 U.S.C. § 362(d), a bankruptcy court can grant such relief so long as it provides notice and a hearing to the other parties. This mechanism ensures both that a creditor's request for relief is meritorious and that the interests of the other parties are adequately protected. And to ensure that those interests are preserved, a creditor who acts without prior approval from the bankruptcy court (like Creditors here) risks being held in contempt of the stay. *In re Webb*, 472 B.R. 665 (Table), at *12 (B.A.P. 6th Cir. 2012) ("A creditor seeking to proceed with an action prohibited by the automatic stay must seek relief from the stay pursuant to § 362(d)."); *In re Clark*, 207 B.R. 559, 565 (Bankr. S.D. Ohio 1997) ("Unless a particular proceeding is specifically designated an exception to the automatic stay, creditors must obtain relief from the stay *prior* to taking any action involving property of the estate. To the extent creditors fail to do so, they act at their own peril.") (internal citations omitted).

Creditors respond with a request that we retroactively ratify or annul their violation of the stay under our § 362(d) equitable authority. *See Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 910 (6th Cir. 1993) ("This section expressly permits the bankruptcy court to annul the stay. This power to annul 'permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay. Such actions would otherwise be void.'" (quoting 2 L. King, *Collier on Bankruptcy* § 362.07 (15th ed. 1987))). We may do so, however, "only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the

debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result." *Id.* at 911. And here, Creditors concede that Stringer did not withhold notice of the stay. Nor do they argue that Stringer is somehow unfairly using the stay to shield herself from an unfavorable result. All things considered, then, the district court did not plainly err in finding that Creditors willfully violated the stay.

Honoring Creditors' unauthorized pursuit of self-help, it bears adding, would contravene the basic vision of the Bankruptcy Code. The automatic stay allows the debtor's assets and debts to be accounted for in one forum, facilitating an organized, collective plan that considers the interests of all parties. The stay gives debtors relief from collection efforts, harassment, and foreclosure actions, and permits them to attempt a repayment or reorganization plan. *In re Robinson*, 764 F.3d 554, 559 (6th Cir. 2014). At the same time, it helps creditors "preserve what remains of the debtor's insolvent estate and provide a systematic equitable liquidation procedure." *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382–83 (6th Cir. 2001) (cleaned up). Allowing a creditor to circumvent the automatic stay based upon his own judgments would lead to the very "chaotic and uncontrolled scramble for the debtor's assets" the stay was designed to prevent. *Id.* (quoting *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir. 1982)). Here, Creditors knew of the § 362 stay and pursued their state court collection action anyway, without prior approval from the bankruptcy court, in willful violation of the stay. *See Weary v. Poteat*, 627 F. App'x 475, 477 (6th Cir. 2015) (holding that a willful violation of a § 362 stay occurs when a creditor takes action to coerce a debtor into paying the creditor despite "knowledge of the bankruptcy stay").

*Stringer's Past Convictions.* Creditors next challenge the bankruptcy court's refusal to allow Squire to introduce evidence of Stringer's past convictions while Squire was "cross examining himself" at the contempt hearing. The bankruptcy court excluded that evidence on the

grounds that Stringer's credibility—the matter that her prior convictions could have impeached—was irrelevant to the issue at the heart of the contempt hearing—whether Creditors willfully violated the automatic stay. Our standard of review raises the bar for Creditors on appeal. We review the bankruptcy court's evidentiary rulings for abuse of discretion, meaning we will reverse an erroneous exclusion of evidence only where it affects the substantial rights of the complaining party. *United States v. Kerley*, 784 F.3d 327, 336 (6th Cir. 2015).

Creditors' argument raises a pair of interesting questions about the mechanics of introducing evidence of a testifying witness's past convictions as impeachment evidence under Federal Rule of Evidence 609. One is whether evidence of Stringer's convictions should have been handled under Rule 609(a), which governs recent convictions, or 609(b), which governs convictions for which "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Complicating matters here is the fact that, at the time of the contempt hearing, 10 years had passed since Stringer was released from prison, but not since she had completed her term of supervised release. In this setting, we have noted disagreement among courts over which event triggers Rule 609(b)'s 10-year clock. *See United States v. Peatross*, 377 F. App'x 477, 489–90 (6th Cir. 2010) (collecting cases).

A second question is the acceptable point at which such evidence can be admitted during the hearing. Historically, such evidence was admissible only during cross-examination of the witness whose convictions were being introduced. 3 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 6:43 (4th ed. 2020). But a 1990 amendment to Rule 609 removed the cross-examination limitation, allowing introduction of past-conviction evidence without precise limitations. *Id.* ("[I]n 1990 the language was amended, so that it no longer limits the attacking party to cross-examination or any particular method of proof."); *see* Fed. R. Evid. 609 (providing

that "the following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction" without specifying when and how such evidence can be introduced). Perhaps the narrowest way to construe this amendment is a grant of permission to introduce prior convictions on direct examination of a witness who would otherwise be impeached with that evidence on cross-examination, ostensibly to soften the blow of prior convictions sprung during cross-examination. *Cf. Ohler v. United States*, 529 U.S. 753, 756 (2000) (observing that the 1990 amendment to Rule 609 "clarif[ied] that [conviction] evidence could also be introduced *on direct examination*") (emphasis added). Today's case, however, goes beyond that narrow ground. Creditors sought to introduce this evidence not during Stringer's testimony, but instead during Squire's "self-cross-examination." And due to this unusual aspect of the hearing, no prior decision appears directly on point.

Regardless of how we might answer these questions, any hypothetical error in the bankruptcy court's exclusion of the conviction evidence was harmless. Neither Stringer's candor on the witness stand nor in her bankruptcy filing was relevant to whether Creditors willfully violated the automatic stay. Admission of the conviction evidence thus would not have moved the needle on the bankruptcy court's finding of contempt. *See United States v. Collins*, 799 F.3d 554, 571 (6th Cir. 2015) (finding that improper admission of past conviction evidence was harmless given the overwhelming evidence of guilt presented at trial). Nor did the bankruptcy court's exclusion of the conviction evidence deny Creditors a fair trial, a point largely undeveloped by Creditors.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the bankruptcy court.